Mr. Chief Justice Shahkey
delivered the opinion of the court.
The defendant in error instituted an action of assumpsit in the circuit court of Yazoo county, against the plaintiffs in error, and on the trial, exceptions were taken to the admissibility of the instruments sued on, without further evidence to show the liabilities of the parties. The action was instituted against William A. Baughan as surviving partner of the firm of Augustine and William A. Baughan, trading under the firm of A. Baughan & Co., and Alexander H. Morton, in his individual capacity.
The first bill of exceptions sets out the note or instrument mentioned ha the first count, which is signed by “ A. Baughan & Co,” and A. H. Morton, and it was objected that this was no evidence against William A. Baughan, without proof that he constituted a member of the firm.
There is nothing in the instrument itself, or in any part of the record, which shows that William A. Baughan was a member of the firm, or who in reality composed the firm. The declaration it is true, is against him as such; but is not something more required to create a liability?
The averment in the declaration cannot be evidence sufficient *223 to put the defendant on proof that he is not liable without some showing against him. The note was as good evidence against any other person, and the law never puts a defendant to the trouble of establishing a defence, until there is some proof against him as to his liability.
The first and second sections of the act of 1824, relied on, were only designed to alter the common law rule, by making the note evidence against those whose names were signed to it, without further proof of the execution of it: and if the individual sued appears a signer to the note, it will be received as evidence of his indebtedness, unless he denies the signature on oath; but certainly,, it is not to be taken as evidence against those whose names do' not appear, and they cannot be required to deny "on oath an instrument to which their names are not attached, and which leave no evidence that they ever made it. The third section of the act referred to, makes the same provision as against defendants, other than those who appear to have executed the note, and requires the defendant to swear that he does not believe the writing was executed by the person by whom it is alleged to have been executed. This provision is very broad, and would seem to include almost every case; but I apprehend, that it is to be taken with some limitation. It would aptly apply to notes made by agents or attorneys, and to the case of an executor or administrator; but there must be a legal liability on the person who is made defendant, resulting necessarily from the signature to the note; otherwise, I apprehend, the rule will not hold. It certainly never could have been intended to make a note evidence against persons other than the makers, or those by whom it purports to have been made, unless they should become defendants in a representative capacity, or by a legal liability, necessarily and. plainly arising from the signature attached to the note. In the present case, the note purports to have been executed by “ A. Baughan & Co.” Is there any thing in the letters used, to show that there was a firm which necessarily imposes a liability on William A. Baughan, or which would-point to him as a member of the firm, rather than to any other person? His name is not to the note, nor does it purport to have been executed by him or his authority, and if it be evidence against him unless he will deny it on oath, might it not also be *224 evidence against any cither person or number of persons? If so, it was not only necessary for the plaintiff to have made his selection amongst the solvent individuals of the county, and the note would be evidence, unless denied on oath, and what could they have sworn to? Certainly, no individual could undertake to swear that Augustine Baughan did not execute the note; and it would follow, that unless this was done, the note must be received as evidence, if the third section of the act is entitled to this broad interpretation. Suppose the notes had been signed by Augustine A. Baughan, without the addition of his name, and the plaintiff had sought to make William A. Baughan, or any other person liable as secret partners, was it only necessary-that the declaration should include them as partners, and would they be liable unless they would swear that Augustine Baughan never executed the nóte? Certainly not. It would have been an easy matter for the plaintiff to have selected some individual as defendant, who could not have sworn .that Augustine Baughan did not execute the note: even if suchilá&ditíSsji the -fact, and-if this section of the statute were to operate on him; I cannot perceive how he could extricate himself. ,'>I cmmo£>belieye, therefore, that the addition of " & Co.” to the ¡¿gnature, is an^’vidence of the liability of William A. Baugháhj’ácifbat it,.by ¡jury,'means follows, that he was a partner and includecLin the addition. Proof was necessary to show his liability; and the cUurt erred in receiving the note as evidence of it, without a further showing.
The next point raised by the bill of exceptions is as to' the admissibility of the pamphlet to prove that interest was allowed by the laws of Louisiana. By the act of 1833, p. 34, the printed statute laws of other states, published by the authority of the states respectively, are to be received as evidence in the courts of this state. Nothing, short of such evidence of authority, would authorise the reception of the statutes of other states. The book read on the trial did not come within the provisions of this act, and was, therefore, improperly admittted.
The only remaining point arises out of the instruction asked in relation to the demand of paymeut. from Bagley and Merritt, it being contended that, by the terms of the instrument, such demand was necessary before an action can be sustained-
*225 If the instrument sued on amounts to a direct and unconditional promise to pay at all events, no demand of Bagley and Merritt was necessary, but if cm the other hand it is only d collateral or conditional undertaking, a demand Avas necessary. It is in the following words:
“ 1200 Dolls. Thirty days after date, we promise to pay to the order of Jno. H. Graham, twelve hundred dollars, in the following manner: ive bind ourselves to ship, from Manchester, in the state of Mississippi, thirty bales of cotton, or so much as will cover this amount of twelve hundred dollars, which said amount is to be credited to us in the following manner, to wit: seventy-four dollars and seventy cents to the credit of A. Baughan & Co., of Calcassee, which closes that account with, and between said Graham and our said concern; and eleven hundred and twenty-five 30-100 dollars, the amount said Graham is now in advance to us in the Manchester, Mi. concern; Avhich said amount of eleven hundred and twenty-five 30-100fs^rRltplaced to the credit of said A. Baughan & Co., cJ$íc|^@^tOT%íi&%aid, the above is to be valid in every respect, m cKse Messrs.JBa*ley and Merritt do not pay over to said GrahamMiaTj^(^fiKHmveV.amed, of twelve hundred dollars with interest fiom date, al & peí cent, per annum, which payment is understood,^5.aBB»Ama^rwithin 30 days from the date thereof, otherwise^g_shipmeigWTO)ve shall be made to meet said note above, of tAvelve rrandred dollars, which note is given for value received.
“ A. Baughan & Co.
“ A. II. Morton.”
This instrument commences by a direct and positive' promise to pay a certain sum of money at a particular time, and in the subsequent part, the manner in which the party intended to make the payment, is pointed out, to wit: by a shipment of thirty bales of cotton, or if that should not be enough, then a greater quantity Avas to be sent. There is no undertaking to ship the cotton to any particular person, and the shipment of the cotton to the payee Avould in itself have been a payment or offset independently of the obligation in the agreement: it Avas, therefore, a useless agreement and imposed no additional obligations on the makers of the notes, since there is no condition in the agreement *226 to send the cottoiq nor could it in any degree qualify the previous promise to pay the money .within thirty days. All the contract after the promise to pay seems to be nothing more than an expression of the mode by which the makers intended to comply with their contracts, cotton being an article of commerce, which readily commands money, and in this instance was evidently looked to as the means by which the amount was to be raised. The amount to be credited to the respective accounts of the firm, is also directed, there being two different accounts to liquidate, both included in the amount, for which the note was given. There is certainly but one feature in the agreement which raises the semblance of a condition, and it is that part which declares that it was to be valid in every respect, in case Messrs. Bagley and Merritt did not pay over to Graham the amount. The language is not such as would raise a collateral, or a conditional undertaking for there is no agreement or promise that Bagley and Merritt would pay it.
There is certainly nothing which shows any liability on their part, nor does it in any way appear how the payment was to come from them. If they were to act in the matter merely as the agents of the parties, then it is certainly no ground for a condition. If it had been paid by them, the obligation of the contract would have been discharged, and it could only have been considered payment of the makers of the note, made by procurement. The note sets out with a positive promise to pay, and there is no condition in the following part of the instrument which makes the payment depend upon the happening of any other thing, or which in any way qualifies the positive agreement.
There was, therefore, no error in the court below in refusing-the charge required, but for the reasons stated, the judgment must be reversed, the cause remanded, and a venire, de novo awarded.