## Case No. 16,352.

### UNITED STATES v. SONACHALL.

[4 Biss. 425.] [1]

District Court, N. D. Illinois. Dec. 1864.

PERJURY — AFFIDAVITS OF DRAFTED SOLDIERS — NOTARY PUBLIC.

1. Under the act of March 3, 1863 [12 Stat. 73], the secretary of war has authority to prescribe what facts shall be stated in affidavits by drafted men claiming exemption from military service; and false swearing in reference to facts so required is perjury.

2. A notary public is an officer authorized to administer oaths in such cases.

[This was an indictment against Joseph Sonachall upon the charge of perjury. Motion to quash the indictment.]

DRUMMOND, District Judge. I am inclined to think this indictment can be sustained, though the question is not free from difficulty, but as after trial the defendant can move in arrest of judgment, I am disposed to overrule the motion to quash. It is an indictment against the defendant for having stated as a fact that which was untrue, in an affidavit made by him and presented to the board of enrollment for the Fifth enrollment district, in pursuance, as is alleged, of the order of the board, under the regulations of the war department. He asserted in an affidavit made before a notary public, with a view of obtaining an exemption from the military service of the United States, that he had never voted at any election in the United States.

I concede that under the law of March 3d, 1863 (12 Stat. 73), the fact that he had voted at an election did not estop him from claiming exemption from the performance of military duty; in other words, if he were a foreigner, and had never declared on oath his intention to become a citizen in pursuance of the laws of the United States, he was exempt from military service, whether he had ever voted or not; but still the board of enrollment had a right to know, in pursuing the inquiry, whether he was a citizen or had ever made an oath of his intention to apply for citizenship, whether he had voted or not. The act already referred to in the 5th section provided for the appointment of a provost marshal. The 6th section declared that it should be the duty of the provost marshal general, with the approval of the secretary of war, to make rules and regulations for the government of his subordinates. The 8th section provided that there should be in each district a board of enrollment, composed of a provost marshal as president, and two other persons to be appointed by the president of the United States. The 14th section provided that drafted persons should be carefully inspected by the surgeon of the board, who should truly report to the board the physical condition of all persons. The sec-

tion proceeds to state: "Persons drafted and claiming exemption from military duty on account of disability or any other cause shall present their claims to be exempted to the board, whose decision shall be final."

The averment in the indictment is that this defendant, in order to comply with the requisition of the board, in pursuance of instructions from the war department, and with a view of claiming his exemption from military service, made an affidavit before a notary public that he was a foreigner by birth and that he had never voted at any election, which last statement the indictment alleges to be untrue.

The 13th section of the act of March 3d, 1825 (4 Stat. 118), declares that if any person in any case, matter, hearing or other proceeding where an oath or affirmation shall be required to be taken or administered under or by any law of the United States, shall upon the taking of such oath or affirmation knowingly and willfully swear or affirm falsely, every person so found shall be deemed guilty of perjury, etc.

The first question to be determined is whether this was an oath under a law of the United States. I think this point is decided by the case of U. S. v. Bailey, 9 Pet. [34 U. S.] 238. That case decides in effect that where the secretary of the treasury had authority to liquidate and pay certain claims to be presented to the government, he had a right to prescribe that an affidavit should be made of the claims, and that where one was made in pursuance of the instructions thus given and there was an untrue statement in the affidavit, that the party might be indicted, although there was no statute of the United States which expressly authorized the officer before whom the affidavit was made to administer the oath in support of the claim, and although there was no law of the United States which expressly authorized the secretary of the treasury to prescribe the particular regulation referred to. It seems that the rule laid down by the supreme court in the case of U. S. v. Bailey [supra] substantially controls this case.

The act of 1863 authorized the secretary of war to make these rules and regulations for the subordinates. The provost marshals and boards of enrollment were the subordinates. The indictment avers that he required affidavit to be made in relation to the particular fact, to wit: when a party claimed exemption on the ground that he was a foreigner, whether he had ever voted or not at an election. There can be no doubt under this act, if this case in 9 Pet. [34 U. S.] 238, is law, that the secretary of war had the right to prescribe this form to the board, and that it was a material fact which he had a right to know. The subject of investigation before the board was to be whether the party was entitled to exemption. If he was a foreigner, it was a pertinent inquiry whether he had ever voted at any election.

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

It may be true that the fact that he had voted did not estop him from claiming the exemption; still, it was a proper inquiry before the board, and it had a right to know whether he had voted or not. I think the illustration given by the district attorney was an appropriate one. If a party went before the board, claiming that he was exempt on the ground that he was a foreigner, they had a right to know where he was born. The secretary had a right to prescribe that he should state under oath where he was born. If he knowingly stated a falsehood in relation to that, it was a matter material to the inquiry, although the fact that he was born in Great Britain, France, Greece, or elsewhere, would not be material as affecting his right to exemption. That is to say, he would be exempt whether he was born in one country or the other and had never made an oath of his intention to claim citizenship; but still the board had a right to know what the fact was, so far as it was within his knowledge. So in relation to many other facts which might be deemed pertinent to the question, Is this man exempt from military duty?

It will be observed that the act of 1825 does not in terms repeat the ordinary definition of perjury at common law, that it must be material to the point in issue, but the language of the act is, that if he shall "knowingly and willingly swear or affirm falsely" "in any case, matter, hearing or other proceeding when an oath or affirmation shall be required to be taken or administered," "he shall be deemed guilty of perjury."

The case referred to, decided by Judge Sprague, in one form went up to the supreme court of the United States; that is to say, after the party had been indicted in the district court he was indicted in the circuit court, and the case is reported in 17 How. [58 U. S.] 204 [U. S. v. Nickerson]. The principle decided by Judge Sprague was, that when the act of congress declared that a certain form should be complied with, in order that the party should be entitled to the payment of money, that the secretary of the treasury had no right to enlarge that form, and go beyond its terms, and I have no disposition to object to his ruling upon that point. I am inclined to think that if a law of congress does prescribe the form and manner in which a thing is to be done in order to accomplish a particular object, that neither president nor secretary has any right to go beyond that form or manner. And if the act of 1863 had prescribed what facts should be stated to the board of enrollment by the party in order to exempt him from military duty, the secretary of war would have had no right to enlarge that statement or go beyond it. It will be seen, therefore, that I hold that there was an affidavit made in pursuance of law, as it was made by the authority of the secretary of war touching a question that was to come before the board of enrollment, in relation to which he was authorized to act, and that in prescribing that a foreigner, when he came before the board and claimed exemption from the performance of military service, should state whether or not he had voted at any election in the United States, was a pertinent subject of inquiry, and, having sworn untruly upon that point, it was a false statement within the language of the act of 1825, and that an indictment will lie.

As to the other point, whether the officer had authority to administer the oath, I have no doubt whatever. This Case of Bailey, already referred to, expressly decides that point in all substantial respects. There, there was no law of the United States. as the court has already stated, which authorized the oath to be taken before a justice of the peace—he was a state officer; but the oath having been taken before him, in pursuance of the regulations adopted by the treasury department, the court held that it was an oath under the law, and that an indictment could be founded upon it if the statement were false. Here the indictment alleges it to have been an oath taken before a notary public. He is a state officer. By the laws of the state and of the United States he has a right to administer an oath. The indictment alleges that he had authority to administer the oath, under the act of 1790 [1 Stat. 112]. This is all that is required. For these reasons I think the indictment must be sustained.