## Case No. 16,322.

### UNITED STATES v. SMITH et al.

[2 Bond, 323.] 1

Circuit Court, S. D. Ohio. Oct. Term, 1869.

CONSPIRACY TO DEFRAUD UNITED STATES—INDICTMENT—VARIANCE—INTERNAL REVENUE LAWS—BONDED WAREHOUSES — TESTIMONY OF ACCOMPLICES—EVIDENCE OF GOOD CHARACTER.

1. In an indictment for a conspiracy to defraud the United States under section 30 of the act of March 2, 1867 [14 Stat. 484], there must be satisfactory evidence, not only of the conspiracy charged, but of the overt act averred, to carry into effect the objects of the conspiracy.

2. A conspiracy is where two or more persons confederate or combine to do an unlawful act, and may be proved by direct and positive evidence, or by facts showing that there was concert of action and a unity of purpose in effecting an unlawful object.

3. In such an indictment, alleging the conspiracy to have been entered into in the county of Champaign, within the Southern district of Ohio, if the proof shows that if there was a conspiracy, it was entered into in the county of Montgomery, it is not a fatal variance between the allegation of the indictment and the proof, the act charged being averred to have been committed within the territorial limits of the Southern district of Ohio, and therefore within the jurisdiction of the court.

4. It was not necessary to set forth the county in which the alleged conspiracy was formed, and it may be rejected as surplusage.

5. A distiller's bonded warehouse, which the law requires to provide, is a part of the distiller's premises; and proof of the unlawful removal of the spirits from such a warehouse sustains the averment of the indictment, that the removal was from the distillery with which it was connected.

6. The government, in an indictment under section 30 of the act of March 2, 1867, is not bound to strict proof of the ownership of the rectifying distillery to which it is alleged the spirits were unlawfully removed.

7. The evidence of an accomplice, in the crime charged, is to be received with great caution, and, as a general rule, will be rejected unless corroborated, as to the material facts stated by him, by credible witnesses.

8. Proof of the good character of the party charged with crime, if there is doubt of his guilt upon the evidence, may afford good ground for a presumption of innocence, but will not be available to overcome or set aside satisfactory proof of criminality.

[Cited in State v. Northrup, 48 Iowa, 585.]

[This was an indictment against George Smith and Edward Smith for conspiring to defraud the United States.]

Warner M. Bateman, Dist. Atty., and Henry Hooper, for the United States.

M. P. Nolan, H. L. Burnett, and Robert Christy, for defendants.

LEAVITT, District Judge (charging jury). This case, after a long and tedious investigation, is now to be committed to the jury for their action. It has been most strenuously contested by counsel, and you are entitled

1 [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

to the thanks of the court for the patient attention you have given to it during its progress. It is the purpose of the court to state, as briefly as possible, the legal points arising in the case and the views of the court upon them, leaving it exclusively for the jury to pass upon the facts. The defendants are on trial for a criminal act, specially set forth in the indictment, in which there are three distinct counts. The first and third counts are substantially alike in their structure, and do not require a separate consideration. The first count alleges a conspiracy by the defendants, in concert with others, entered into in the county of Champaign, in the Southern district of Ohio, in November, 1867, to defraud the United States of the legal tax or duty imposed upon a large quantity of distilled spirits. The overt act of the conspiracy charged is the unlawful removal of fifty barrels of spirits from the distillery of one A. C. Campbell, where it was manufactured, to the rectifying establishment of the defendants, not being a bonded warehouse, with a criminal intent. The third count varies the charge by averring the unlawful conspiracy to have been entered into on March 15, 1868, in the county of Montgomery, in said district, and charges, as the overt act, the removal of the spirits to the rectifying establishment owned by the defendants and other persons. The second count alleges a conspiracy for the fraudulent removal of fifty barrels of distilled spirits from the distillery to the rectifier by night—that is, after sunset and before daylight—in violation of the statute and with a criminal intent. The indictment is framed under section 30 of the act of congress of March 2, 1867, which provides that if two or more persons shall conspire to commit any offense against the United States, or to defraud the United States in any manner whatever, and one or more of said parties to the conspiracy shall do any act to effect the offense, such person shall be deemed guilty, and shall be liable to punishment. The jury will observe that the statute is as broad and comprehensive as language can make it. It includes any conspiracy to violate a law of, or to defraud the United States, in any manner whatever. But to consummate the offense contemplated by the statute, there must be, what the law terms, an overt act done, to effect the object of the unlawful conspiracy. Such an overt act, namely, the unlawful removal of the spirits, is averred in all the counts in this indictment. To justify a verdict of guilty under this indictment, there must be proof satisfactory to the jury, first, that there was a conspiracy, to which the defendants were parties, substantially as alleged; and second, that the overt acts averred are proved by the evidence. And here it is proper to direct the minds of the jury to some legal propositions submitted by the counsel for the defendants, and state the views of the court upon them for the guidance of the jury in

their action in the case. I regret that the infirm state of my health will not permit me to do this as fully, or perhaps as satisfactorily, as I could desire.

It is insisted, in the first place, that under the first count of the indictment, in which it is alleged, inadvertently no doubt, that the unlawful conspiracy was entered into in Champaign county, whereas the proof shows the entire transaction took place in Montgomery county, there can be no conviction. The claim is, that in this particular the evidence does not sustain the first count, and that the jury must return a verdict of not guilty on it. In other words, that there is a fatal variance between the first count and the evidence offered to sustain it. I have not had the opportunity of investigating this point as fully as I could have desired. From the reflection I have bestowed upon it, I can not concur with the counsel for the defense on the point. The discrepancy between the averment as to the county in which the conspiracy was formed and the evidence is not material. This court has jurisdiction in crimes throughout the territory and counties included in the Southern district of Ohio. And the general averment in the indictment, that the offense charged was committed within the district, without designating any particular county, would have been sufficient to sustain the jurisdiction of the court. And the United States, in this case, is not bound to prove that the offense was committed in the county alleged, and the allegation may be rejected as surplusage, as in that case the averment would be that the offense charged was committed within the judicial district, and within the jurisdiction of the court.

It is also strenuously urged by defendants' counsel, that there is a fatal variance between the averments in the several counts and the proof in this, that the removal of the spirits is alleged in the indictment to have been from the distillery of A. C. Campbell, whereas the proof shows the removal was from the bonded warehouse connected with the distillery. This objection is exceedingly technical in its character, and if sustained, the court would be compelled to withdraw the case from the consideration of the jury, and instruct them, without regard to the merits of the case, that they must return a verdict of not guilty. I am reluctant to do this in any case, unless the law requires it as an imperative duty. In a case like this, which has been so fully presented to the jury on the facts, and which has occupied so much time in its investigation, I prefer submitting it to them for their action. And, in my view, the point submitted does not require me to withdraw the case from the jury. While it is true, the removal of the spirits was directly from the bonded warehouse, and not from the part of the building used as the distillery, I am quite clear that the bonded warehouse may be legally held to be a part of the distillery premises; and that the

proof sustains substantially the averment that the removal was from the distillery. The law in force at the time made it the duty of every distiller to provide a bonded warehouse in immediate connection with the distillery, in which the spirits, when manufactured, were to be deposited, and which may be held to be a part of the distillery. In point of fact, if I rightly remember the evidence, this place of deposit was under the roof of, and a part of the building in which the distillation was carried on.

There is still another technical legal point urged as a ground for the acquittal of these defendants. It is insisted the evidence does not sustain the averment in the indictment as to the ownership of the rectifying distillery. The evidence as to the parties interested in the rectifying seems not to be satisfactory. I do not propose to refer specially to it, as it is doubtless in the memory of the jury. It may be well doubted whether this question of ownership is material in the case. The criminal overt act charged is the removal of the spirits to a place other than a bonded warehouse, and the proof of such removal constitutes the gist of the offense. It was not necessary to allege in the indictment the ownership of the rectifying establishment; and such averment may be stricken out as not a necessary element of the offense charged. But, if I am correct in my understanding of the averments of the indictment, the objection on the ground of variance in proof and the allegations as to ownership does not lie. In the first count, the ownership of the rectifier is stated to be in these defendants alone, and in the third count, to be in them and other persons. So that whether they were the sole owners, or whether there were other persons interested with them, the evidence sustains one or the other of these counts. And a verdict may be returned on either, according to the effect to be given to the evidence by the jury.

If it shall be necessary hereafter to consider these several legal points, and give to them a fuller examination, the opportunity will be afforded for that purpose. For the present the jury will receive the views stated by the court as the law upon these points. And in this aspect of the case, it will be the duty of the jury to consider it on its merits, with reference to the evidence before them. The first inquiry for the jury will be, whether the conspiracy charged in the indictment is proved to their satisfaction. A conspiracy within the meaning of the statute is, where two or more persons combine, confederate, or agree to do any unlawful act, or to commit a fraud against the United States. And the proof of such conspiracy may be, first, by direct proof by witnesses having positive knowledge of its existence; or, second, it may be legally presumed from facts and circumstances leading with reasonable certainty to that conclusion. It will be obvious to the jury that it will rarely happen that a con-

spiracy can be established by direct and positive proof. Persons acting together for an unlawful end pursue their plans in secrecy, studiously avoiding all means by which their guilty purpose may be known to others. In the present case, there is no direct evidence that these defendants entered into a deliberate agreement between themselves, or others, to defraud the United States of the tax imposed on the spirits in question; and the inquiry for the jury will be, whether from all the facts in evidence they can fairly infer there was such a conspiracy. In other words, are the jury satisfied that the defendants between themselves, or in combination with others, were actuated by a fixed purpose of committing a fraud upon the United States, and whether, in accomplishing that object, there was a oneness of purpose, and a unity of action, evidencing their guilty intent to effect their object. This is an inquiry exclusively for the jury, as it involves merely the force and effect to be given to the evidence. The claim of the counsel for the United States is, that the proof shows, not only that these defendants had knowledge of the fraud intended by the unlawful removal of the spirits specified in the indictment, but that they participated and aided in such removal. On the other hand, the defendants' counsel most strenuously contend there is nothing in the evidence which in any way implicates them in the charge of a conspiracy to defraud the government, or in any overt act to effect the unlawful purpose of such a conspiracy, if one existed, in law or in fact.

As remarked before, if the jury find the fact of the existence of the conspiracy charged, they will inquire whether these defendants were so connected with, or aiding and assisting in, the unlawful removal of the spirits, charged as the overt act of the conspiracy. There is certainly some conflict and contradiction in the testimony. But one fact is beyond controversy, and is not denied, namely, that frauds of the most deliberate and repulsive character were committed in numerous instances in reference to the spirits manufactured at the distillery of A. C. Campbell, now deceased. One of the methods by which these frauds were perpetrated was by the fraudulent removal of the spirits to the rectifying establishment of these defendants, situated near the distillery. Without payment of the tax, they passed through the process of rectification, and then were sent to market and sold as tax-paid spirits. And the fact in relation to these frauds, and which renders them all the more odious, is, that government officers, in gross violation of their oaths, were participants and aiders in their commission. It will be for the jury to say, whether from all the circumstances proved, these defendants are implicated in the frauds charged. And it may be proper to remark here, that though it is clearly proved that others were perhaps more flagrantly guilty of these frauds than these defendants, it is no justi-

fication for them if they too were guilty participants in them. The jury will doubtless have noticed that the government in this case has introduced a witness—Huffman—whose testimony, if credible, most clearly implicates these defendants in the frauds charged. This witness, it is not denied, was a prominent actor in the frauds. He does not deny his guilty agency in them. The defendants' counsel insist that his position before the jury as an accomplice in the crime charged renders his testimony utterly worthless, and that it should be wholly rejected by the jury. Without discussing the law as to the credit due to an accomplice, I may briefly state that, on the soundest principles of reason, it does affect the credibility of a witness occupying that position. And, as a general rule, his testimony must be received with great caution, and unless sustained and corroborated, in the material facts stated by him, by credible witnesses, his testimony should be wholly rejected. It is also insisted that the veracity of this witness is seriously impeached by other witnesses, who positively contradict him as to material parts of his testimony. And there seems to be no doubt as to the fact that these contradictions do appear. But, without further notice of this witness, I will remark that it is the exclusive province of the jury to pass on the question of the credit due to witnesses, and to them in this case it is referred.

In conclusion, I may report to the jury that they are to direct their inquiries (1) to the proof as to the existence of the conspiracy charged; and (2) to the question of the guilt of defendants in effecting the objects of the conspiracy, by the unlawful removal of the spirits charged as the overt act. As to the first of these inquiries—the existence of the conspiracy—the jury must be satisfied of the fact, having reference to the legal principles applicable to it, as before laid down by the court, to justify a verdict of guilty. And as to the other inquiry, the connection of the defendants with the overt acts, the jury must be satisfied that the averments of the indictment are substantially sustained by the evidence. As to dates and the quantity of spirits removed, the government is not bound to make the proof in exact correspondence with the statements in the indictment. The gist of the question is, whether spirits, in a larger or less quantity than is named in the indictment, were unlawfully removed, with the guilty participation and aid of the defendants in the act. And I may here remark, that whatever doubts the jury may entertain as to the criminal complicity of the defendants, they can have none as to other parties not now on trial. If they were before the jury to answer for the crime with which these defendants are charged, there could not be a shade of doubt as to the result.

In my remarks I have made no special reference to the second count, charging a violation of the statute in the removal of the spirits after sunset and before sunrise. I do not suppose it is necessary for the jury to consider this count. If the defendants, in the judgment of the jury, are guilty under the first and third counts, it is not material to inquire as to the second. And if the jury find they are not guilty under the first and third counts, they would probably not be prepared to return a verdict of guilty under the second. The mere fact of a removal of the spirits at a time forbidden by the statute, in the absence of a fraudulent or criminal intent, would not, in a criminal prosecution, be regarded as a sufficient basis for a verdict of guilty.

I am requested by counsel to remind the jury that the defendants have produced very satisfactory evidence of their previous good characters for integrity and good citizenship. Such proof they have undoubtedly given, and they are entitled to all the benefits the law secures to them from it. But, in its legal effect, it can not be held to negative or set aside clear proof of guilt. Its chief value is in cases where a well-founded doubt may exist in the minds of a jury, from the evidence adduced, of the guilt of a defendant charged with crime. In such a case, the law benignantly holds that good character may be taken into consideration by a jury as affording a presumption in favor of the innocence of the accused party.

The jury returned a verdict of guilty against the defendants. They were sentenced to a short period of imprisonment and a fine of $2,000.