In deciding this motion the following opinion was delivered.
Davis, P. J.
The court has given to the consideration of the several motions that have been made in this case all the time practicable during the period that has elapsed since the argument. The court listened with great patience, and it must be said justly, with pleasure, to the able and exhaustive argument of counsel upon the questions presented. The first motion relates to the supposed defects of the indictment, calling for, as is urged by counsel, an order in arrest of judgment. A motion of that character must be made upon the record; the record includes both the indictment, the plea, and the verdict. The first ground upon which this motion is made is that several averments of the indictment are defective in not containing what is technically called “ venue,” but in ordinary language, allegations of time and place. The common law was *156 extremely strict in respect to allegations of venue, and required that each material averment should contain an allegation of both time and place.* On looking carefully into the indictment before us it will be seen that in respect of several of the averments the venue is properly alleged. As a result in subsequent averments of the indictment it would be sufficient to use the simple words “then and there” in every case to which the attention of the court has been called upon this motion. I do not think it material that the court should discuss the question whether or not some of the omissions of this character are so important, that at common law the indictment would be bad. I am inclined to think that upon a demurrer to this indictment a pretty serious question would arise in respect to this alleged defect. But we have a statute in this State familiarly known to lawyers as the statute of jeofails, which was enacted for the express purpose of changing the strict rule of the common law in respéct to all this class of technical objections. The statute may be found in the Second Revised Statutes (p. 728, § 52), and it is in these words (I read only so much as relates to the-present case): “No indictment shall be deemed invalid, nor shall the trial, judgment or other proceedings thereon be affected: . . . . By reason of any other defect or imperfection in matters of form, which shall not tend to the prejudice of the defendant.” The omission of the words “then and there” in the several averments of the indictment and in the place pointed out by the learned counsel have not in any sense prejudiced the defendant. And in a criminal case like the present I can conceive of no injury to the defendant, provided there be satisfactory proof to show" *157 that the offense was committed, if at all, in the county where the indictment was found and where the trial was had. In such a case as this the objection becomes, after a verdict, a purely technical one, working no prejudice, and the strict rule of the common law is abrogated by the statute referred to. Some of the cases which I have examined go much further than the court is called upon to go in this case. As, for instance, the case of Mason v. People, reported in 26 N. Y. 200, when the indictment was for burglary. The count charged burglary by breaking and entering with intent to commit crime, but without specifying what crime was intended to be committed. The common law required such a specification. The court of appeals held that the indictment did not charge the crime of bur-' glary, “ with that degree of particularity which the rules of criminal pleading require and the prisoner had a right to demand. Such a defect might have been taken advantage of by demurrer, ór by objection to the evidence at the trialbut it also held, in substance, that no objections being made in that form, and as the prisoner was not misled, the defect was within the statute of jeofails.
And in the case of People v. Powers (6 N. Y. 50), which was an indictment for larceny, second offense, the defect was a failure to set out facts sufficient to show jurisdiction in the magistrates before whom the first conviction was had. That was á matter of substance, but the court of appeals held that it was a defect, within the meaning of the statute to which I have referred. And in the case of Fleming v. People (27 N. Y. 329), the defect was a failure to negative certain provisions of the statute, and the court held the defect cured by the statute. There are a variety of other cases, such as People v. Rynders (12 Wend. 425); Charles v. People (1 N. Y. 180), in which the court goes further in the application of this statute than the court *158 is now called upon to do. These cases (and, indeed, without these authorities, the plain letter of the statute), dispose of the alleged defect as to the failure to repeat the venue. The result is that upon this question the court is of opinion that the motion should be denied.
Questions of variance between the proof given on the trial and the indictment cannot be raised on a motion in arrest. The indictment in this case copies, “m Iicbg verba” the statement marked, I believe, No. 4, which contains the words “as per ledger.” Now, in considering this question, I am departing a little from the strictness belonging to this motion, because the question is really one of variance between the proof and the allegations of the indictment. So far as the motion in arrest of judgment is concerned it cannot be made to appear, for the purpose of upholding such a motion, that there was a variance on the trial. I think, however, it was not necessary to aver that the “ledger” was either true or false, for the oath was not - as to its truth, nor as to the correctness of the account contained therein. But it was to the fact, that the company absolutely owned certain assets stated and described in the account referred to. It was quite indifferent from what book or from what account the statement of assets was taken, as, under the oath set forth, perjury could not be assigned on the ground that the items of assets did not appear in any ledger or book. The perjury, under the oath, is assigned on the affidavit, upon the falsity of the statement that the assets described were the absolute property of the company. And it would be no answer or defense to such an indictment to show that the book referred to did not contain those items, or did not contain them as set forth in form precisely as the affidavit asserts them to have been owned.
It is sufficient to sustain the averment, therefore, *159 by showing that the company did not own these assets, without taking notice of any book or ledger or other matter in which the account of them was kept; and it would be a perfect defense to show in this case, under this indictment, that the company did, in fact, own these assets, even if it appeared that they were not entered in any book whatever. It is entirely manifest, as it seems to me, that under the affidavit, and that part of it upon which this indictment is predicated, it was incumbent to show of necessity the falsehood of the statement that the assets, which were said to have been taken from the ledger, were not owned by and were not the property of the company; and that it should be a perfect defense on the contrary to show that they were so owned ; and the question whether or not they appeared on any book is, both upon the allegation of the indictment and the affidavit which was produced under the indictment, matter of immateriality. It does not touch the substance of the issue, and no indictment, I think, could have been sustained upon the allegation that the ledger, to which reference is had in point of fact, was different from the account apparently taken from it; considering this either as a question of variance or as a material question arising in any other way, I have no difficulty in disposing of it. It was raised on the trial and the same view then taken by the court, and that view has been strengthened by the consideration I have been able to give to it since.
Another point urged by the counsel is that the indictment alleges that the report was made and prepared for deposit with the superintendent of insurance, while the statute requires its deposit in the office of the comptroller. Had the original statute remained unchanged this defect would probably be fatal, because the oath to a report not to be deposited according to the statute would not be one required by law. So it will be observed that this question turns altogether *160 upon the question whether the statute has been so changed that the report to be made under oath is required by law to be so made for deposit with the superintendent of insurance instead of with the comptroller, as it was formerly required. I have examined this statute with a good deal of care, and although it is not a question absolutely free from doubt it seems to me to be one about which there remains very little question. In 1859, the legislature saw fit to change the system of the laws in relation to insurance, and instead of requiring that system to be administered by' the comptroller of the State,, as it hitherto had been, it created a new and independent department—denominated the insurance department. The first section of the act by which that was done was in these words, “There is hereby established a separate and distinct department, which shall be charged with the execution of the laws heretofore passed, or 'that may hereafter be passed, in relation to insurance.” Counsel do not seem to have given so much force to this section as it seems to me to be entitled to. It will be observed that the language takes from the comptroller and carries over to the new department the execution of the laws theretofore passed, or that thereafter might be passed in relation to insurance. If we examine those laws, we discover a system for the purpose of regulating the insurance companies of the State, to be carried out previously by the comptroller, but necessarily, after the passage of the act of 1869, to be carried out by the superintendent of insurance, placed at the head of a new department. One portion of that system was the requirement.of annual reports to be made, formerly to be prepared on oath and filed in the office of the comptroller. It will be observed that the report is not to be made to the comptroller, but the report is to be made and prepared, and the statute simply declares the place of its depositthe office in *161 which it must be filed. The provision of the statute (section 12 in the original act) declared that the comptroller should cause to be prepared and furnished to every company printed forms of the statements herein required, and empowered him to make such changes from time to time with forms of the same as should seem to him best adapted to elicit from the companies a true statement of their condition in respect to the several points thereinbefore enumerated. Here was the power conferred to indicate the manner in which the law required the report to be executed. Section 1, which provides that a distinct department shall be charged with the execution of the laws, transfers that power to the head of that department, so that no one could doubt, it seems to me, that the comptroller lost all authority to dictate the form of these reports or to make any changes from time to time, and the superintendent of insurance acquired that power. But, as to the place of deposit, another section of this act of 1859 very clearly indicates the intention to change the place ; I refer now to section 5 of the original act. ‘1 All books, papers, and documents, securities, stocks, bonds, mortgages, and all other papers whatever in the comptroller’s office, and in the office of the secretary of State, relating to the business of insurance, shall on demand be delivered and transferred to the superintendent of the insurance department, to be, and to remain in his charge and custody.” By necessary implication, if all existing papers were to be transferred to the new custodian, created by this law, all subsequent papers required in the process of the execution of the law must seek the same custodian.
The intention of the legislature to require the report to be filed with the superintendent is too clearly indicated by the terms of the act to leave much doubt on the subject of the effect of the change made by the act of 1859. And so, in glancing through these pro *162 visions of the statute it will be found that the fee to be paid by each corporation upon the deposit of this report is payable to the superintendent of insurance, and not to the comptroller. That fee for filing the annual statement, formerly required to be $20, was, as will be observed by section 15 of the statute now before me, increased in case of marine and life insurance companies to the sum of $50. That is clearly required by the statute to be paid to the superintendent of insurance, and it is made his duty to pay all fees over to the treasurer of the State. By the clearest implication, therefore, although not expressed in words, the place of deposit of these reports is transferred from the comptroller’s office to the insurance department; and the contemporary construction of this act, which has prevailed from so far back as 1859 to the present day, of making and filing all these reports with the insurance department, instead of with the comptroller, is of great weight in giving effect to the construction which seems justly to attach to these several statutes. I am, therefore, not able to see any force in this position that requires me to interfere with the verdict.
The point that the indictment does not aver that the oath was “legally administered” is one of form rather than of substance, and falls within the statute of jeofails, to which I have already made sufficient allusion. The language of the indictment: “And the said Robert L. Case, touching and concerning the truth of the matter contained in said statement and affidavit, was then and there sworn, and did then and there take his corporal oath before the said Moses B. Maclay, as such notary public, he, the said Moses B. Maclay, such notary public, as aforesaid, having competent lawful power and authority to administer the said oath to them, and each of them in that behalf.” We can readily see that it would have been a better pleading to have stated this in the form suggested by *163 the counsel for the defense—that the oath was “ then and there” legally administered; but after the verdict (and there was no objection of that character raised in the progress of the trial) such a defect seems to be entirely technical, and ought not to be respected by the court so far as to affect the judgment. The court of appeals, in one of the cases which I have already cited —it was an indictment for perjury, in which the indictment alleged that the oath was administered on the Scriptures, the statute providing that it shall be administered on the gospel—the court held that it was an immaterial defect after the verdict, first, because the word “Scriptures” was held to include the gospel ; and secondly, because the form of the indictment, although it did not conform to the statute in strictness, was cured by the statute of jeofails, already alluded to.
The position that the oath must precede the statement cannot, I think, be maintained. The substance of the point made by the counsel is that the statute requires what is known in legal parlance as a promissory oath. A promissory oath is one where the affiant swears that he will perform some duty to be performed subsequent to the taking of the oath, as where an officer on taking an official oath swears that he will well and faithfully discharge the duties of his office. But I do not understand the counsel for the defense as insisting that an oath of that character precisely was to be taken ; on the contrary, I understand him as insisting that the examination, or rather the report, is to be in the nature of an examination, on which' the party is to be personally sworn to make true answers to such questions touching the several points of interrogation under the statute as shall be put to him. And that the oath must, like the examination of a surety or bail,. precede the questions that are to be submitted to the affiant.
*164 I am cited to a case which, to some extent, is certainly analogous, where the court held that on the examination of bail the oath must be administered previously to the examination of the bail produced, or the contents of the depositions subscribed by him must be put to him in the form of interrogations, and he must so verify them as though he were giving evidence in substance under the solemnity of an oath.* In short, the court held that the simple affidavit was not a complianee with the requirements of the statute in respect to the justification of bail. But that is not this case. In my judgment the language of the statute, in stating the statement shall be prepared under oath, or that the officer shall prepare a statement under oath, simply requires that the statement shall be verified by oath. The statement was to be made out, not necessarily by the officers who are to verify it, but may be made out by any person who performs clerical duties for them. But when it is completed the statute requires that it should be verified by an oath. It then becomes a statement made under oath, within the meaning of the law, and the oath is by no means necessarily to precede the preparation of the statement, as though it were upon interrogatory and answer, in which ■a witness was sworn tó make true answers to all such questions as shall be put to him. But the statute is fully complied with when the completed statement is made and duly sworn to. It becomes completed when made under oath, by appending the affidavit of verification. Beside, the statute expressly authorizes the superintendent of insurance to prepare for the officers of these companies the form of the statement, and the form, I think, by implication, includes a form of vetificationsuch as he may require. And as the statute indi cates no form except what may be inferred from the *165 simple words “ under oath,” but provides that the superintendent may prepare forms to be filled out by these various companies, I do not see that there is any reason to question that the form prescribed by him, though it be in the form of an affidavit, becomes the oath which this statute requires. And if it be taken by a proper officer, and duly sworn to, it becomes a verification of the statement itself ‘•’•under oaHo.”* I have, therefore, no embarrassment in disposing of that objection as one that does not justly apply to the case before us.
The point was made that the statement presented in this case was not one contemplated by law, because it was made in the month of February, 1876, some two months after the expiration of the fiscal year, and that it does not profess to- state the condition of things at the time the statement was made out, but relates to an antecedent point of time of about two months, to wit: to December 31. Now, on that subject, I have examined the statute, and am clearly of opinion that the statement contemplated by law is an annual one, covering a fiscal year. The statute obviously requires reports for completed years, and the act of 1861, cited by the learned counsel for the people (Laws of 1861, c. 326, p. 769), produces uniformity in the fiscal years of all this class of corporations. December 31 was, therefore, the close of the fiscal year, and statement of the condition on that day was properly required by the superintendent. It was a matter of indifference within what period after that day this statement was made, provided it complied with the requirement of the statute that it should be made in sixty days ; and this time is evidently given to the companies in order that they may be able to bring down their affairs to the termination of the year, on *166 December 31, and make an annual statement for the fiscal year expiring on that day. The sixty days’ time is evidently given for the purpose of enabling them to consummate that intention of the statute. It is therefore a matter of no importance that the items of the statement relate to a time antecedent to the time of its being in fact written or prepared. Such a report, therefore,-is not in excess of the power of the superintendent to require, and is not obnoxious to the objection urged by the learned counsel.
The most material point relates to the form of the affidavit. It is claimed that by the true construction of the affidavit the closing words “according to the best of their information, knowledge and belief, respectively,” relate to and qualify every portion of the affidavit. If this be the true construction, the affidavit is a qualified one in respect to each of its statements, and the averments of the indictment should have set forth the qualification and negatived both the truth of the statement and the truth of the assertion that they were true according to the best of the affiant’s knowledge and belief. In that case such averments would be matter of substance, calling for proof of additional facts beyond those which established the untruth of the statement of assets. I concur with the learned counsel for the defense in the opinion that when an affidavit is made upon information and belief, it is essential, in an indictment thereon, that it should embody the whole of the affidavit so far as it is material to the charge of perjury, and so far as the oath is qualified by the statement, upon information and belief, with proper averments negativing the same. But I do not so construe this affidavit. ■ My construction of this affidavit is that the first member of it is a positive statement. The facts therein contained are, first, that the officers (the president and secretary), make the affidavit as such officers' of the company, and, sec *167 ondly, that all the assets above described were, on December 31, the absolute property of the company, free and clear from all liens or claims thereon, except as above stated. Then follows a statement in relation ■ tó certain schedules and the explanations thereunto annexed, and as to their being a correct exhibit of the liabilities, income, disbursements and general condition and affairs of the company, on the said December 31, and this statement alone is qualified by the words according to the best of their knowledge, information and belief respectively. There are good reasons for qualifying the second member of this afiidavit, because that relates to the condition and affairs of the company, generally upon which they are called upon to report, and may well and properly be stated with the qualification as to their knowledge and belief. The other relates to matters which are or certainly ought to be, within the personal knowledge of the officers, and it was the obvious intention, as it seems to me, of the framer of this affidavit—the superintendent of insurance, I suppose, or possibly the comptroller—that the condition of the assets in respect to the absolute property of the company, should be affirmatively and positively stated. So there would be nothing left to doubt or conjecture on the subject of what the company actually had in the form of real estate or of money and securities covered by that statement. These respective members are divided in punctuation by a semicolon; it very commonly occurs that affidavits contain statements which are positive and made upon knowledge, followed by statements which are upon mere information and belief. And a very common illustration may be taken from the affidavit of merits, which lawyers are often preparing for their clients, in form as follows: “John Doe, being duly sworn, says that he is the above-named defendant,” and then proceeds to say that he has a good and sufficient de *168 fense to the action, as he verily believes after having stated the case, &c., to his counsel. Now, no one would claim that the subsequent qualification respecting “information and belief,” applied to the statement that he was the defendant in the action. That statement would be treated as a positive one, and if any person not the defendant should make an affidavit in which he states positively that he is the defendant, that portion of the affidavit would be the basis of an indictment for perjury, charging him with having sworn of his own knowledge falsely that he was the defendant, when in point of truth he was not. And I think no construction would be given which would carry forward the force of an affirmation on belief so as to affect the assertion that he was the defendant in the action. Now, it does not follow necessarily, therefore, that in the form of affidavit of this kind, that the words “on information and belief,” of necessity, affect every statement contained in the whole affidavit. The question is one of fair construction, and in my judgment a fair construction of this affidavit is that it contains a positive averment to certain facts, and an averment upon information and belief of certain other facts ; and therefore, I am of opinion that this point is not well taken.*
The motion for a new trial on newly discovered evidence in this case is not brought within the requirements of any of the rules affecting such motions. The newly discovered evidence relates to one of the most material questions litigated on the trial. In respect to that question it is merely cumulative in the strictest sense of that term. The new witnesses are not called to give testimony to any newly discovered facts, and are not supposed to be able to give any newly discovered evidence. They are, in fact, simply new *169 witnesses to old evidence. The evidence which they propose to give us was, in fact, given by others in almost the precise words in which these several affidavits state they could give it. They are not shown by the affidavits to have been unknown; in short, they appear upon the face of the papers to have been subordinates of the company, familiar with the affairs ; and one of them stated that he prepared the greater part of this statement. The point to which it is sought to call them is whether or not this report was sent up to Mr. Mac-lay’s office by another employee (Roberts), and presented to Mr. Maclay by him and brought back by him, and that Mr. Maclay was not present at the office of the company. That is a point upon which one of the employees was called. It was manifestly known to have been an important point, otherwise Roberts would not have been called as a witness, for he gave no testimony on any other subject.. It was something, therefore, the materiality of which was understood by the counsel for the defense. It is something upon which the defendant was examined upon the exact proposition, as to the carrying of this paper back and forward by the porter; and it was something as to which most clearly it was the duty of the defense to have had other employees produced for the purpose of showing what knowledge they had on the subject. I am at a loss to see any ground upon which the court would be justified in holding that this comes within the rule of “ newly discovered evidence” required by the long settled and well established practice in such cases. This court is doubtless clothed with power to grant new trials under the act of 1875, where they would be granted in civil actions. But it is asking the court to go far beyond any power that any court has ever assumed in any civil action to grant a new trial where it is palpable the ground substantially is one of the defenses, which was litigated by calling witnesses who *170 gave testimony in relation to it, and it appears that the other witnesses who were employed in the company, and who had similar information on that subject, might have been called, but were not. That is all there is of this case. It is true that by the affidavit of Mr. Fullerton some attempt is made to explain the fact, or rather to meet the argument of the district attorney with reference to the statement of the defendant that it had not occurred to him until the notary was sworn that he had not, in fact, made oath to this affidavit; but it would hardly have been allowable to have contradicted him upon that subject. I think, to grant a new trial for the purpose of enabling some one to contradict the defendant upon that subject would be going quite too far. It was, at most, a mistake made by him. I think his stating that it did not occur to him before was clearly a mistake, and I think so, because it is manifest that Roberts had been subpoenaed upon that very question, for the purpose of showing that the affidavit was not sworn to ; and was present as a witness and had already been sworn on that subject, a fact which could not have taken place if it had not occurred to somebody that such a question was at issue. But I am free from all doubt upon the subject as to the power or authority of the court under such a state of facts to grant a new trial on the ground of newly discovered evidence.
[The learned judge here discussed the question as to the verdict being against the weight of evidence, and concluded as follows :]
There was, I must say, evidence to support the verdict. The question of the weight of evidence was purely one as to what credibility belonged to the several witnesses, and under all the circumstances no court ought to interfere- with such a verdict. The result is that the motion in its several aspects must be denied.
II. General Term, July, 1878. The plaintiff in error, having obtained a writ of error to review the conviction, the general term in affirming the conviction held substantially in accordance with the above opinion of Davis, P. J.*
III. N. Y. Court of Appeals, December, 1878. The plaintiff in error then obtained a writ of error to review the judgment of the general term.
George F. Comstock, Algernon 8. Sullivan, James T. Worthington and Charles H. Winfield, for plaintiff in error,
Cited : as to necessity of concurrence of the will to constitute perjury: 1 Bish. Cr. Law, § 320 ; 2 Id. § 1048. As to necessity of being sworn before making the statement: Smith v. People, 1 Parker Cr. 317; People v. Restell, 3 Hill, 304. As to non-requirement of statement to be filed in superintendent’s office: L. 1853, c. 463, § 12 ; L. 1866, c. 514. As to swearing honestly to a fact, or belief, though it may be false : Commonwealth v. Brady, 71 Mass. 78 ; R. v. DeBevoian, 6 Carr. 17 ; U. S. v. Shellmeir, 1 Baldw. 370 ; U. S. v. Alkins, 1 Sprague, 558; Commonwealth v. Brady, 5 Gray, 78 ; Cathan v. State, 39 Miss. 541. As to necessity of oath being actuady taken before a duly authorized officer: 2 Chit. Cr. L. 304; 3 Just. 166 ; 2 Whart. Cr. L. § 2205 ; 2 Rev. Stat. p. 681, § 1. As to perjury not being predicated on voluntary oath: U. S. v. Babcock, 4 McLean, 113; People v. Travis, 4 Parker, 213 ; Jackson v. Humphreys, 1 Johns. 499 ; Ross v. Rouse, 1 Wend. 477 ; Wood v. People, 59 N. Y. 117. Or upon an immaterial matter : King v. Griepe, *172 1 Ld. Raym'd, 256; Roscoe Cr. Ex. 758 ; 2 Russ, on Crimes, 1757; State v. Morris, 9 N. H. 99 ; Commonwealth v. Knight, 12 Mass. 274 ; State v. Hathaway, 8 N. McCord, 118. Or upon matter not required by the statute: Warren v. Fowler, 8 Md. 25 ; Silver v. State, 17 Ohio, 365; State v. Hella, 2 Hill, 290; Ortner v. People, 4 Hun, 323; Commonwealth v. Pickering, 8 Gratt. 628. Or upon an affidavit not made in pursuance of a statute: Hood v. State, 44 Ala. 81. Or unless the defendant is brought within the material words of a statute both by the allegations of the indictment and. the proof: 1 Arch. Cr. Ev. 385 ; Wood v. People, 53 N. Y. 511; People v. Allen, 5 Den. 76 ; Dawson v. People, 25 N. Y. 399; State v. Barber, 18 Verm. 195; State v. Keene, 34 Me. 500; State v. Foster, 11 Iowa, 291. Or the false swearing is charged as it occurred: Williams v. State, Humph. 8; King v. Horne, Comp. 672; Starkie Cr. Pl. 77; King v. Stevens, 5 East, 258 ; Ortner v. People, 6 N. Y. Sup’m Ct. (T. & C.) 548. As to necessity of showing an authorized oath taken before a duly authorized officer : People v. Phelps, 9 Wend. 9 ; U. S. v. Deming, 4 McLean, 3 ; McGregor v. State, 1 Carter, 232; State v. Galliman, 2 Ind. 375; Morrell v. People, 32 Ill. 429. And taken in due form of law: People v. Tuttle, 36 N. Y. 431; State v. Morris, 9 N. H. 96 ; Dodge v. State, 4 Zabris. 455 ; 2 R. S. p. 681, § 1. As to granting a new trial because weight of evidence tended to show the improbability of the defendant having taken any oath: Cochran v. State, 7 Humph. 544; Bedford v. State, 5 Id. 552; Leake v. State, 10 Id. 144; State v. Lyon, 12 Conn. 487. As to necessity of the evidence being not only consistent with the prisoner’s guilt, but inconsistent with any other rational conclusion: Stevens v. People, 4 Parker, 396, and 10 N. Y. 549 ; People v. Bennett, 49 N. Y. 137; United States v. Douglass, 2 Blatchf. 207; People v. Murray, 41 Cal. 66 Algheri *173 v. State, 25 Miss. 548 ; 1 Starkie on Ev. 510. As to the variance from the averments of the indictment in the proof: Williams v. State, 7 Humph. 48 ; State v. Raymond, 20 Iowa, 582 ; 2 Whart. Cr. Law, § 2261; Commonwealth v. Brady, 71 Mass. 78; United States v. Shellmire, 1 Baldw. 370. As to refusal to grant a new trial on account of newly discovered evidence which is merely cumulative : Roberts v. State, 3 Kelly, 310; Commonwealth v. Flanagan, 7 Watts & Serg. 415; Commonwealth v. Murray, 2 Ash. 41; Aiken v. Bemis, 3 Woodb. & M. 349; Commonwealth v. Williams, 2 Ash. 69; People v. McDonald, 47 Cal. 134; Williams v. People, 45 Barb. 201. As to granting a new trial, if newly discovered evidence being brought before another jury would probably change the result: Commonwealth v. Flanagan, 7 Watts S. 423 ; Thompson’s Case, 8 Gratt. 637; Giles v. State, 6 Geo. 276; State v. Carr, 1 Frost, 166 ; 3 Graham on New Trials, 1044. As to defendant’s request for an acquittal at close of prosecution’s case: People v. Bennett, 49 N. Y. 137. As to motion in arrest of judgment: People v. Bruno, 6 Parker, 657 ; People v. Allen, 43 N. Y. 28 ; Wood v. People, 53 Id. 511; People v. Allen, 5 Den. 76; 1 Arch. Crim. Ev.. 285 ; Dawson v. People, 25 N. Y. 399 ; State v. Barber, 18 Verm. 195 ; State v. Keene, 34 Me. 500 ; State v. Godfrey, 24 Id. 232: State v. Foster, 11 Iowa, 291 ; Bryan v. State, 45 Ala. 86 ; People v. Gaige, 26 Mich. 30; 1 Chit. Cr. L. 172, 296; 1 Stark. Cr. Pl. 83, 90, 91; Arch. Cr. Pl. 315; 2 Chit. Cr. Pl. 342, 420; Commonwealth v. Lodge, 2 Gratt. 579; Campbell v. People, 8 Wend. 636; State v. Neal, 42 Mo. 119; People v. Warren, 9 Wend. 272; Tuttle v. People, 36 N. Y 431; State v. Norris, 9 N. H. 96; Dodge v. State, 4 Zabr. 455; Burns v. People, 59 Barb. 543; Starkie Cr. Pl. 127-8; State v. Gallimon, 2 Ired. 372; McGragor v. State, 1 Carter, 232 ; United States v. Wilcox, 4 Blatchf. 391; *174 Whart. Cr. L. § 2241; United States v. Stowell, 2 Curtis, 153 ; 2 T. R. 69 ; 1 Id. 69 ; 1 Leach, 249 , 2 M. & S. 381; Starkie Cr. Pl. 77 ; 5 East, 258 ; United States v. Cowing, 4 Cranch C. Ct. 613; Geston v. People, 61 Barb. 35; Commonwealth Knight, 12 Mass. 274. As to exceptions as to formation of the general term: Van Dam v. Crosby (A. D. 1751), 2 Smith’s Hist. p. 25, (Imprint of N. Y. Historical Society, 1830) ; L. 1877, c. 448, §§ 221, 228, 234, 235, 237 ; 1 R. L. 335, § 8 ; Id. p. 335, c. 66; R. S. part. III. c. 1, tit. 4, § 19. As to punctuation and construction of the affidavit: Rex v. Crespigny, 1 Esp. 280 ; United States v. Conner, 3 McLean, 573; United States v. Stanley, 6 Id. 409 ; 2 Chit. Cr. L. London Ed. 1816 ; 2 Bishop, §§ 1043, 1045, 1047; 2 Whart. § 2119; Jackson v. Staap, 1 Johns. 337; Moffat’s Executors v. Strong, 10 Id. 13. As to notary’s jurisdiction : 18 How. Pr. 118; 33 Id. 312. As to necessity of allegation of time and place where crime is committed: 7 Geo. IV. c. 64, § 20; 14 and 15 Vict. c. 100, § 24; 3 R. S. 6 Ed. p. 1022; Gustin v. People, 61 Barb. 35; McDonald’s Case, 3 City Hall Rec. 128; Carnig’s Case, Id. 44 ; Keylyng’s Rep. 15; Hawkins’ Pleas of the Crown, vol. 2, c. 25, § 35; State of Mo. v. Cook, 1 Mo. 547; Queen v. Harris, 2 Lord Raymond, 1304. As to necessity of every issuable fact being charged with a venue: United States v. McNeal, 1 Gallison, 387; 2 Wash. C. C. 282; 2 Hawkins, c. 2, § 78, and c. 23, § 88 ; Bacon’s Abridgement, G., 4; 2 Hal. 178; 2 Strange, 901; Comyn’s Dig. 480 ; 11 Serg. & R. 177; 2 Colby’s Crim. L. 131; Dyer, 69; 2 Hale’s Pleas of the Crown, 173, 178; Croke’s Crim. L. 31 ; State v. Roberts, 26 Me. 268; State v. Hardwick, 2 Miss. 226 ; Jane v. State, 3 Id. 61; State v. Allen, R. M. Charlton (Geo.) 518 ; People v. Burns, 6 Park. Cr. 657; 1 Archbold’s Cr. Pr. & Pl. 671, note 1, citing 4 Bl. Com. 373; 3 Burr. 1901; 1 East, 146 ; 5 Penn. 245 ; 2 Burr. 801 ; 2 Strange, 845. *175 As to oaths not having been actually taken by the defendant : Ruloff v. People, 18 N. Y. 179 ; People v. Morrison, 1 Park. Cr. 625 ; Van Rensselaer v. Dole, 1 Johns. Cas. 279 ; 2 R. S. 681, § 1.
*171 Exception was taken to the ruling of the court, on all the points presented by defendant’s counsel, and each of the several points separately.
Benjamin K. Phelps, District Attorney, for the People, defendants in error.
The general term was properly constituted, and had full power to hear and determine the cause (Code of Civ. Pro. §§ 228, 229, and 235). The report was properly deposited with the superintendent of the insurance department, and not with the comptroller (L. 1853, c. 463; 2 R. S., 6 ed. p. 672 et seq.; L. 1859, c. 366 ; 2 R. S. 6 ed. p. 638, et seq.). It was not necessary for the indictment to charge that the items upon which perjury was assigned were false, within the information, knowledge, and belief of the defendant (McKinney v. People, 3 Parker, 510).- Neither was it necessary to set out the whole affidavit (Campbell v. People, 8 Wend. 636). The objections that the indictment did not properly charge the oath to have been administered in due form of law cannot prevail when raised for the first time after the verdict (3 Rev. Stat. Banks’ 6 ed. p. 1022; Mason v. People, 26 N. Y. 200 ; People v. Powers, 2 Seld. 50 ; People v. Phelps, 5 Wend. 9 ; People v. Rynders, 12 Id. 425 ; Charles v. People, 1 Coms. 180 ; Fleming v. People, 27 N. Y. 329; Tuttle v. People, 36 Id. 431; Sanchez v. People, 22 Id. 150; Kennedy v. People, 39 Id. 251; Tomlinson v. People, 5 Parker, 313; People v. Taylor, 3 Den. 91). The books of the company were admissible in evidence for the purpose of showing what appeared in them to be the property of the company (United States v. Wood, 14 Pet. 430 ; 13 Curtis Supreme Ct. 536). To be proper ground for granting a new trial the testimony should be newly discovered, should not have been obtainable with reasonable diligence before the trial, and should not be *176 cumulative merely (People v. Supreme Ct., 10 Wend. 280; Williams v. People, 45 Barb. 201; People v. Mack, 2 Parker, 673 ; People v. McGuire, 2 Hun, 269 ; Fleming v. Hollenback, 7 Barb. 271). The evidence was sufficient to sustain the verdict, and the court would not be justified in interfering with it unless the finding was either without evidence, or so against the weight of evidence that it must have been brought about by either partiality, corruption, or gross ignorance (Mackey v. N. Y. C. R. R., 27 Barb. 528; Williams v. Vanderbilt, 29 Id. 491; Fleming v. Smith, 44 Id. 557; Morse v. Sherrill, 63 Id. 21; Beckwith v. N. Y. Cent., 64 Id. 300). Questions of fact are not to be reviewed upon writ of error (Wood v. People, 2 Hun, 381).

 See Gill v. People, 3 Hun, 187; People v. Davis, 56 N. Y. 95; United States v. Trobe, 3 Pittsb. (Penn.) 6; United States v. Smith, 2 Bond, 323; United States v. Winslow, 3 Sawyer, 337; State v. Munch, 22 Minn. 67.

 See People v. Restell, 3 Hill, 289.

 See United States v. Sonachall, 4 Biss. 425.

 As to this pointj overruled in Lambert’s case, p. 181, of this vol.