JOHN WILLIAMS and ARTHUR MCGOFF *vs* THE PEOPLE.

The effect of the amendment of section 399 of the Code of Procedure, passed
in 1865, which provides that "a party to any action or special proceeding in
any and all courts and before any and all officers acting judicially, may be
examined as a witness on his own behalf," and of the concluding clause thereof,
declaring that "nothing contained in section eight of this act, shall be held or
construed to affect or restrain the operation of this section," was merely to
remove all restrictions applicable to the civil courts. The amendment does
not embrace parties to indictments and criminal cases.

Hence, on the trial of an indictment for a criminal offense, the prisoner can not
be examined as a witness in his own behalf.

A new trial will not be granted, in a criminal case, on the ground of newly dis-
covered evidence, where the evidence is merely cumulative upon a subject in
reference to which other evidence was introduced, upon the trial; nor where
it is the mere opinion of the witness, which would not establish a fact that
would change the result; nor where the evidence merely goes to impeach or
to contradict the testimony of another witness.

THE prisoners were indicted for robbery, and at a court of
oyer and terminer held in and for the county of Rens-
selaer, in June, 1865, and they were tried and convicted of that
offense. Upon the trial each of the defendants was offered as
a witness on his own behalf. The prosecution objected, upon
the ground that the witnesses were incompetent and their
evidence inadmissible, and the court excluded the witnesses.
The prisoners' counsel duly excepted to the ruling and deci-
sion of the court. A bill of exceptions was made and filed, ·
and the proceedings were stayed and removed to this court by
a writ of certiorari sued out by the district attorney.

A motion was also made for a new trial upon the ground
of newly discovered evidence. The material facts appearing
in the moving papers are sufficiently stated in the opinion.

*W. A. Beach,* for the plaintiffs in error.

*J. H. Colby,* (district attorney,) for the people.

*By the Court,* MILLER, J. The question to be determined
on the bill of exceptions which is brought before us by virtue

of the certiorari issued in this case is, whether the prisoners were competent witnesses for themselves upon the trial of the indictment, under the amendment of section 399 of the Code, passed in 1865.

Section 399 of the Code as amended, (*Laws of* 1865, *pp.* 1290, 1291,) enacts that "a party to any action or special proceeding in any and all courts, and before any and all officers acting judicially, may be examined as a witness on his own behalf." The last clause of the same section says that "nothing contained in section eight of this act shall be held or construed to affect or restrain the operation of this section."

Section eight which is thus limited in its operation, restricts the application of section 399 to certain courts in this state, and does not include criminal courts, surrogates' courts, nor special proceedings, or statuory remedies, and evidently embraces only civil actions.

Section 399, as it existed prior to the last amendment, contained no limitation of the eighth section of the Code. The amendment is broad and comprehensive in its terms, including all courts and all proceedings before officers acting judicially. There can be no question that by section eight the portion of the Code containing section 399 is limited to civil courts and civil actions, and does not include any statutory or other proceedings. Is that section modified or changed so as to include criminal cases and criminal courts?

In the construction of statutes which are made the subject of judicial investigation the first thing to be considered is the intention of the legislature which framed the statute. Lord Ch. J. Tindal, in the case of the claim of the Dukedom of Sussex, (8 *Lond. Jur.* 795,) said: "The only rule for the construction of acts of parliament, is that they should be construed according to the intent of the parliament which passed the act."

This intention, however, is first to be sought after in the act itself and in the words there employed; and if the words

are free from ambiguity and doubt and express plainly, clearly and distinctly the sense of the framers, there is no occasion to resort to other means of interpretation. (*McCluskey* v. *Cromwell*, (11 *N. Y. Rep.* 601.) Ruggles, J. who delivered a dissenting opinion, employs the following apt language; "In construing a statute courts must never lose sight of its object and intent. Statutes are to be expounded according to the ordinary sense of the words, unless such construction would be inconsistent with or contrary to the declared or implied intention of the framers of the law, in which case the grammatical sense of the words may be modified, restricted or extended to meet the plain policy and purview of the act. But in such case the intent must be obvious and must be collected from the words of the act. In ascertaining, however, the natural signification of the words employed, if they embody a definite meaning which involves no absurdity and no contradiction between different parts of the same enactment, then the meaning apparent upon the face of the statute is the one which we are at liberty to say was intended to be conveyed." (*Newell* v. *The People*, 3 *Seld.* 97.)

Under the rules laid down, can it be said that the language employed in the amendment is so plain, clear and definite as to leave no doubt as to what actually was intended ? In responding to this inquiry, we must first look at the intent, then the words in connection with the implied intention of the framers of the law, and lastly the whole act itself to see that there is no absurdity or contradiction in different portions of it.

If we take the language employed in the concluding portion of the amendment and consider it within the light of these principles, it is certainly not entirely clear that they were intended to embrace criminal cases arising before criminal courts.

We are not at liberty to interpret the words standing alone, as an isolated and distinct enactment, but should look

further, and consider the whole act, as well as the purposes which were designed to be accomplished. The Code of Procedure which was embraced originally in one single act, contained a system of legislation which was intended to provide an entire new practice in the civil courts of this state. Its object was to change entirely the pleadings, practice and proceedings which had been in vogue for a great length of time and to introduce a new system which should supersede the old one.

The general system of legislation upon the subject matter of a statute, may be taken into view in order to aid the construction of a particular statute relating to the same subject. (*Fort* v. *Burch*, 6 *Barb.* 60.) One of the distinctive features which has eminently characterized the action of the legislature in reference to this subject, has been the fact apparent in all their proceedings, that they designed to keep the civil and criminal Codes separate and distinct from each other. The first act reported and finally adopted related only to proceedings in civil actions, with no reference whatsoever to proceedings in criminal courts, and never to criminal actions, except a definition of actions and the distinction between the two classes. (*Code*, §§ 2, 3, 4, 5, 6.) A criminal Code has since been reported by the commissioners and submitted to the legislature, but has never been adopted ; thus leaving the laws applicable to criminal cases in full force and effect without change or alteration, in any material and important particular. It was especially stated in the report of the commissioners in 1848, that the Code reported related entirely to civil actions — and the part relating to criminal actions was reserved for a future report. The title of the Code itself, and its various provisions, apply exclusively to civil actions, and such is its general tenor and effect. Not a word is said about indictments, or criminal courts, or trials, or any proceedings had under them.

Again : the title of which section 399 constitutes a part relates to miscellaneous proceedings in civil actions, and gen-

Williams *v.* The People.

eral provisions therein. These indicia furnish at least some evidence as to what actually was designed by the Code and prove and establish that it was not intended to include indictments and proceedings under them. Such being the case it would be inconsistent with the objects and purposes of the Code to incorporate in it as an amendment to one section of it alone an enactment which related to criminal proceedings, without especially and distinctly stating that this was intended. If it had been intended to apply this provision to indictments, an enactment allowing criminals to testify on their own behalf would have left no question upon that subject. If the legislature designed to include indictments and trials upon them, they would no doubt have said thus much, in appropriate language. In making so important a change in the practice in the criminal courts I think they would have left no doubt upon the question, and the omission to make any express provision on the subject is somewhat significant, and strongly demonstrates that it was not intended to embrace that class of cases.

The policy of the legislature in reference to the examination of witnesses, has been somewhat of a progressive character, and the section now to be interpreted, has been the occasion of frequent amendments. The time may come when it may be deemed wise and expedient, and the best way of promoting the ends of justice to open wide the doors and permit persons indicted and all accused parties to take the witness' stand and to be examined on their own behalf. When that period does arrive the enactment containing so great a change in the rule of evidence, will, no doubt, be made sufficiently clear and explicit, to leave no question as to its object and purposes, and as to what actually is intended. Until that intention is made manifest beyond any question, I think it would be a dangerous exercise of judicial authority to hold that parties indicted under such circumstances are admissible as witnesses on their own behalf.

In considering this question another rule should not be

overlooked, and that is, that whenever the intention can be discovered, it ought to be followed with reason and discretion in the construction of the statute, although such construction be contrary to the letter of the statute ; and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers. (*Sedg. on Stat. and Com. Law*, 296. *Bac. Ab. Stat.* 1. *Jackson* v. *Collins*, 3 *Cowen*, 89, 96. *The People* v. *Utica Ins. Co.*, 15 *John*. 358, 380, 381. *The People* v. *The N. Y. Central R. R. Co.*, 3 *Kern.* 78, 81.)

Statutes must be expounded according to their meaning, and not according to the letter. The letter of the law is the body ; the sense and reason of the law is the soul. (*Pillow* v. *Bushnell*, 5 *Barb.* 156, 159.)

Applying the principles which I have discussed to the enactment in question and considering the general object and purposes of the Code, I am of the opinion that the effect of the amendment was merely to remove all restrictions applicable to the civil courts of this state, and that it does not embrace parties to indictments and criminal cases. It therefore follows that no error was committed by the court in excluding the witnesses at the trial.

The prisoner Williams at the same time when the bill of exceptions in this case was argued moved for a new trial upon affidavits, on the ground of newly discovered evidence. . Two persons swore that they were present at the time of the commission of the offense charged against Williams, and saw the offense committed, and that Williams did not commit it. One of these affiants afterwards makes an affidavit which is read in opposition to this motion, in which he swears that according to the best of his opinion, Williams did not steal the watch ; that he is not able to say for certain, whether said Williams stole the watch or not, and does not know whether he stole it. Affidavits impeaching both of these persons are introduced, and I think are admissible, which establish that those witnesses are unworthy of credit and not

Williams *v.* The People.

be believed under oath. Even if the general statement in the moving affidavits, in reference to this branch of the motion, was entitled to consideration; yet I think that the affidavits are fully met in the opposing papers.

The other affidavit relied upon, states a declaration of the prosecutor to the person making the affidavit, after the robbery had been committed, from which and from his actions he believed and inferred that the prosecutor then for the first time discovered the loss of his watch. The effect of the evidence disclosed would be to prove that Sullivan, the prosecutor, had sworn falsely or was mistaken in his testimony in in reference to the time when he found that his watch was gone.

There are several objections to granting a new trial upon this evidence. 1st. It is cumulative upon a subject in reference to which other evidence was introduced upon the trial. (3 *Gra. & Wat. on New Trials*, 1046, 1047 *and* 1048.) 2d. It is the mere opinion of the witness, which would not establish a fact that would change the result. (*Id.* 1043, 1047.) 3d. The evidence goes to impeach or to contradict the testimony of the prosecutor and therefore is not admissible. (*Id.* 1074, 1076, 1077. *See also Powell* v. *Jones*, 42 *Barb.* 24.)

Upon each of the grounds stated, the evidence is not entitled to consideration, upon this motion, and the motion must therefore be denied.

Conviction affirmed, and proceedings remitted to Rensselaer county oyer and terminer. Motion for new trial denied.

[ALBANY GENERAL TERM, September 18, 1865. *Hogeboom, Miller* and *Ingalls*, Justices.]