## Law and Equity

IN THE

# SUPREME COURT

OF THE

# STATE OF NEW YORK.

---

THE PEOPLE OF THE STATE OF NEW YORK *vs.* EDWARD L.
MOLINEUX.

The governor has no power, during a recess of the senate, and without its
consent, to appoint a major-general of the State National Guard, to fill a
vacancy occurring, in time of peace.

The act of 1849, "to provide for filling vacancies in office," was passed to
provide for the filling of vacancies in elective offices, only.

There is either a *casus omissus* in the statute, on this subject, or the legislature
has intentionally left a vacancy in the office of major-general occurring in
time of peace, to be filled in the ordinary way, viz. by a simple devolution
of the command upon the officer next in rank. *Per* GILBERT, J.

The statements contained in the headings to the chapters, titles and articles
into which part 1 of the Revised Statutes is divided, of the subjects to which
they respectively relate, are a part of the law itself, and not in any wise
extrinsic to the enacting clause. Their office is solely to control, limit and
apply the succeeding provisions of the statute. And effect should be given
to them, according to their fair and ordinary import and understanding.
*Per* GILBERT, J.

QUO WARRANTO against Edward L. Molineux, claiming the military office of major-general of the second division of the National Guard of the state of New York, under an appointment made by the governor, August 31, 1868, during the recess of the senate.

The complaint alleged that the defendant, on the 22d day of September, 1868, at the city of Brooklyn, in the county of Kings, did usurp, intrude into, and unlawfully hold and exercise the military office of major-general of the second division of the National Guard of the state of New York. Wherefore, the plaintiffs demanded judgment, that the defendant was not entitled to the said office of major-general, and that he be ousted therefrom, with costs.

The defendant, in his answer, denied each and every allegation in the complaint contained, and alleged that he, the defendant, at the time and place in said complaint mentioned, was and still is major-general of the second division of the National Guard of the state of New York, duly appointed, and commissioned and qualified, and that by virtue thereof he, the defendant, entered upon and exercised the duties of said office.

For a further, separate, and distinct answer and defense to said action, the defendant alleged that during the recess of the senate of the state of New York, and on or about the 31st day of August, A. D. 1868, a vacancy happened in the office of major-general of the second division, National Guard of the state of New York, to which an appointment had been made by the governor of said state, with the consent of the senate, and that thereupon the governor duly granted to the defendant a commission as major-general aforesaid, and that no meeting of the senate of the state of New York had been since had or held.

On the trial at the Kings' circuit, before Justice GILBERT and a jury, the following facts were stipulated and agreed upon:

The People *v.* Molineux.

1. That on the 14th day of July, 1868, the resignation of Major-General Harmanus B. Duryea, second division of the National Guard of the state of New York, was duly accepted by the governor of said state, whereby a vacancy happened in said office.

2. That on said day there existed, and still exists, a recess of the senate of the state of New York.

3. That on the 31st day of August, 1868, and during such recess, a vacancy happened in the office of major-general of the second division, National Guard of the state of New York, to which an appointment had been made by the governor of the state of New York, with the consent of the senate, to wit, the appointment of said Harmanus B. Duryea.

4. That the papers purporting to be an appointment and commission, annexed to said stipultion, and marked " A " and " B " respectively, are under the hands and seals of the officers therein stated.

5. That said defendant qualified by taking the oath of office, under said papers, purporting to be commission and appointment order marked " C," and each of them, and filed the same.

6. That said defendant claimed to assume command of said second division, under and by virtue of said alleged appointment order marked " C," and commission and qualification, and each of them.

7. That no meeting of the said senate of the state of New York has, since said 14th day of July, 1868, been had or held.

8. The paper " B," called commission, was not actually made out at the adjutant-general's office and signed, until after September 23, 1868.

9. That it was not received by the defendant until after the 23d of September, 1868.

10. An order, numbered special order No. 96, was made and entered at the time of its date.

This order here follows :

" General Headquarters, State of New York, Adjutant▪ General's Office, Albany September 1, 1868.   Special Orders, No. 196.   1. Edward L. Molineux having been appointed to the office of major-general of the second division, National Guard, in the place of Major-General Harmanus .B. Duryea, resigned, he will be obeyed and respected accordingly.   2. Brigadier-General Philip S. Crooke, of the fifth brigade, is hereby relieved from the command of the second division, and will transfer the same, together with all books, papers and other property belonging thereto, to Major-General E. L. Molineux, and will resume the command of his brigade.   By order of the commander-in-chief.

(Signed)   S. E. MARVIN, Adjutant General."

The defendant then rested.   The counsel for the defend- ant moved that the complaint be dismissed, on the follow- ing grounds : 1st.  That no cause of action has been proved or established against the defendant.   2d.  That it affirm- atively appears, from the evidence that the defendant was lawfully in the possession of the office of major- general of the second division of the National Guard, and lawfully exercising the functions and duties per- taining to that office at the time of the commencement of this action.

The court denied the motion, and the defendant's coun- sel excepted.   The court then ordered the jury to find a verdict for the plaintiffs, and the defendant excepted.

Whereupon the jury found a verdict for the plaintiffs, and judgment was entered for the plaintiffs, and against the defendant.

*Phillip S. Crooke*, for the plaintiffs.

*King & Lathrop*, for the defendant.

GILBERT, J.　This is an action in the nature of *quo warranto*, to try the title of defendant to the office of major-general of the second division of the National Guard of this state.　The jury, under the direction of the court, rendered a verdict for the people, and the case was then reserved for further consideration.　No question was made that the case is one within the provisions of the statute of *quo warranto*, or that the action is in due form.　(*Code*, § 432.)　The defendant was appointed by the governor during the present recess of the senate, upon the happening of a vacancy occasioned by the resignation of the previous incumbent, Major-General Duryea.　I have little hesitation in saying that the formalities requisite to invest the defendant with the office have been performed.　The sole question in the case, therefore, is whether the governor had the power to make the appointment without the consent of the senate; and this, in my opinion, depends upon the question whether there is a statute authorizing this mode of filling the vacancy, except in time of war.　The provisions of the constitution on this subject exclude all implication of power in the governor, *virtute officii*.　Section 3 of article 11 ordains that "the governor shall nominate, and, with the consent of the senate, appoint all major-generals," &c.　This language is too plain to admit of any doubt that the consent of the senate is essential to the validity of an original appointment.　Section 5 of article 10, confers upon the legislature the power, and makes it their duty to provide for the filling of vacancies in office.　This is necessarily exclusive of the governor.　Whatever other powers, therefore, he may possess, as commander-in-chief, these specific powers of appointment and of filling vacancies have not been conferred upon him by the constitution, but on the contrary have been thereby carefully withheld from him and deposited elsewhere.　Upon the trial, evidence was given to show that the power in question

had been exercised by the predecessors of the present executive. In a case involved in any doubt, this fact would deserve to have great weight; but otherwise it is entitled to very little consideration, in a legal point of view. To come at once to the question presented, I have been able to find only two statutes which have any bearing upon it, and these are the only ones cited by the learned counsel for the defendant. The first is chapter 28, of the laws of 1849, entitled, "An act to provide for filling vacancies in office." That act provides, that "Whenever vacancies shall exist, or shall occur in any of the offices of this state, where no provision is now made by law for filling the same, the governor shall appoint some suitable person who may be eligible to the office so vacant or to become vacant, to execute the duties thereof until the commenment of the political year next succeeding the first annual election, after the happening of the vacancy at which such officer could be by law elected; and the person so appointed to fill such vacancy shall possess all the rights and powers, and be subject to all the liabilities, duties and obligations of such officer, as they are now or may hereafter be prescribed by law," &c. In the instance before me, there was not any exercise of the power conferred by this statute. The appointment of the defendant is not to perform the duties of the office temporarily, but is a full and complete appointment to the office itself. But I am of opinion that this statute does not apply to the case. In the first place the statute limits the duration of appointments under it to the commencement of the political year next succeeding the annual election after the happening of the vacancy, at which by law, such officer could be elected. In the case of a major-general, this period would never arrive. The tenure of that office is not restricted to any specified time. Upon a literal construction of the statute, therefore, an execution of the

power thereby granted would be equivalent to a permanent appointment, which would be in direct contravention of the provision of the constitution before cited, requiring the consent of the senate to such an appointment. In the second place, the law has always provided for filling vacancies in the office of major-general, by devolving the command upon the officer belonging to the division next of rank; and, finally, regarding the intention of the legislature, it is quite evident to my mind, that this statute was passed to provide for the filling of vacancies in elective offices only. The other statute cited is part 1, chapter 5, title 6, article 4, section 42 of the Revised Statutes. (1 *R. S.* 123.) It is not disputed that this statute is in force. The language of section 42, taken by itself, would clearly embrace this case. But the heading or inscription to chapter 5, in which this section is contained, is " of the public officers of this state *other than militia or other town officers,*" &c. Much effort was spent, and many authorities cited, to show that the title of an act cannot control the plain words contained in the body of the statute. Subject to the qualification that, "the words, if they be general, and not express or precise, shall be restrained unto the fitness of the matter or person," this rule of interpretation is correct. But the inscription to chapter 5 is not in any sense a title to a statute. It forms a part of the body of the act quite us much as the section cited, and it was inserted for the purpose of controlling and limiting the scope and application of the general words used in the chapter. Part 1 of the Revised Statutes was passed as one act. (*Laws of* 1827, 2d *session, ch.* 9 ; *Id.* 1828, 2d *session, ch.* 20.) The title and preamble of this act are in these words: " An act concerning the territorial limits and divisions, the civil polity, and the internal administration of this state. Whereas it is expedient that the several statutes of this state, relating to its territorial limits and divisions, its civil

polity, and its internal administration, should be consolidated and arranged in appropriate chapters, titles, and articles; that the language thereof should be simplified, and that omissions and other defects should be supplied and amended; therefore the people of the state of New York, represented in senate and assembly, do declare and enact as follows," &c. Then follow the chapters, titles and articles into which the act is divided, each containing a preliminary statement of the subjects to which they respectively relate. In this form of enactment such statements are a part of the law itself, and not in any wise extrinsic to the enacting clause. Their office is solely to control, limit, and apply, the succeeding provisions of the statute. To reject them, or refuse to give effect to them, according to their fair and ordinary import and understanding, would be to make the law, not to administer it. The rule I have thus laid down has, so far as I know, been uniformly applied to the Revised Statutes, and has also been followed in respect to the Code of Procedure. (*Williams* v. *The People*, 45 *Barb.* 201.) I have thus briefly intimated the results of the examination which I have been able to give to the case. It follows that, either there is a *casus omissus* in the statute on this subject, or the legislature have intentionally left the vacancy in the office of major-general, occurring in time of peace, to be filled in the ordinary way, namely, by a simple devolution of the command upon the officer next in rank. I think the latter alternative is most probable, being more consonant with the nature, organization and objects of the militia system. In time of war the governor is expressly vested with the power of appointment, in case a vacancy occurs. (*Laws* 1862, *p.* 899, §85.) And it seems to me that the legislature, while framing a code of laws on this subject, did, by making the exercise of this power to depend upon such an exigency, evince a clear intention not to intrust the power to be exercised in time of peace. But if a *casus*

*omissus* exists, the court has no power to supply it. My conclusion is that the people are entitled to judgment.

Judgment accordingly.

[KINGS SPECIAL TERM, October 28, 1868. *Gilbert,* Justice. The above decision was affirmed, *pro forma,* at a general term held in Kings county, December, 19, 1868, LOTT, P. J. and J. F. BARNARD, GILBERT and TAPPAN, JJ. present; and it was affirmed unanimously by the Court of Appeals, March term, 1869.]