## THE STATE *ex rel.* THE ATTORNEY GENERAL V. RANSON.

1. **Constitutional Law**: TITLE OF ACTS: SECTION 2807 OF THE CHAPTER ON JUSTICES OF THE PEACE. It is well settled that the object of constitutional provisions such as section 28, article 4 of our State constitution, which declares that "no bill  *  *  shall contain more than one subject, which shall be clearly expressed in its title," is to prevent the conjoining in the same bill of incongruous matter, and subjects having no legitimate connection or relation to each other, and in no way germane to the subject expressed in the title, and to prevent surprise or fraud upon members of the legislature, rather than embarrass legislation by making laws unnecessarily restrictive. Such provisions are liberally construed; and it is held that if the title of an original act is sufficient to embrace a provision contained in an amendatory act, it will be good, and it need not be inquired whether the title of the amendatory act would of itself be sufficient.

Section 2807, Revised Statutes 1879, provides for the election of justices of the peace and fixes their tenure of office. Chapter 44 of which this section forms part, was passed under the title: "An act to revise and amend chapters 176 to 186, inclusive, regulating the jurisdiction and procedure before justices of the peace in civil cases." The chapters referred to are chapters of the General Statutes 1865, under the general title "Of justices of the peace and their courts." Upon the principles above laid down, *Held*, that section 2807 is not void as being in contravention of section 28, article 4 of the constitution.

2. ——: EXTENSION OF TERMS OF OFFICE: JUSTICES OF THE PEACE. Section 2807, Revised Statutes 1879, provides for the election of justices of the peace throughout the State at the general election in 1882, and declares that every justice of the peace in office at the time of the enactment of the section shall continue to act as such until the expiration of his commission and until his successor shall be elected and qualified. The object of this enactment was to remedy a defect in the existing law, by fixing a definite and uniform time for the election of justices of the peace. One of its effects was to prolong by two years the terms of office of justices elected in 1876. These justices were elected for a term of four years, and by the law in force at the time of their election, were to hold until their successors should be elected and qualified. Section 8, article 14, constitution 1875, provides: "*  *  nor shall the term of any office be extended for a longer period than that for which such officer was elected or appointed." *Held*, that section 2807 is not in conflict with the constitutional provision. The object of the provision is to prevent

OCTOBER TERM, 1880.          79

The State ex rel. The Attorney General v. Ranson.

special legislation in favor of particular incumbents of office. It was not intended to interfere with the legislature in the exercise of its power of making such reasonable changes in the times of electing public officers as the public interest and convenience might require. The fact that section 2807 results incidentally in extending the terms of some justices of the peace, is not sufficient to invalidate it.

3. ———. The principle is reaffirmed that courts should never declare a statute void, unless its nullity and invalidity are placed, in their judgment, beyond a reasonable doubt.

*Quo Warranto.*

*D. S. Twitchell,* *W. V. Childs* and *Field & Small* for relator.

Section 2807 is a nullity, because : (1) It is not embraced in the title of the bill, and, therefore, violates section 28 of article 4 of the constitution of Missouri. *State ex rel. v. Lafayette Co. Ct.,* 41 Mo. 39; *State v. Wilson,* 7 Ind. 516; *State v. Bowers,* 14 Ind. 195 ; *Igoe v. State,* 14 Ind. 239 ; *Spaugh v. Huffer,* 14 Ind. 305 ; *Mewherter v. Price,* 11 Ind. 199; *Ryerson v. Utley,* 16 Mich. 269 ; *People v. Palatine,* 53 Barb. 70; Cooley on Const. Lim., pp. 143, 144, 149 ; *City of Kansas v. Payne,* 71 Mo. 159 ; *People v. Denahy,* 20 Mich. 349; *Foley v. State,* 9 Ind. 363; *Gillespie v. State,* 9 Ind. 380. (2) That part of said section which continues justices in office whose terms were to expire at the recent election is in violation of section 8 of article 14 of the constitution of Missouri. See also section 14 of article 9, *idem.* (*a*) There was a vacancy at the expiration of four years from date of Ranson's commission, and Childs holds title by appointment to the office held by Ranson. § 5 of art. 14, Const. (*b*) No recital of reasons are necessary why an appointment is made, it is only necessary that it shall appear with or without reasons that an appointment has been made.

*Peak & Yeager* for respondent.

The legislature has full power to fix the time at which elections shall be held, and also has the right to fix the powers, duties and duration in office of justices of the peace. Art. 6, § 37, Const. When they assume to act and do pass a statute in the premises, such statute will be maintained, unless it is in direct conflict with the constitution. By this statute they have simply fixed the time at which all justices shall be elected. But it is contended, by virtue of the second paragraph beginning with: "But every justice," etc., the legislature has extended the term of office in violation of section 8, article 14. In using said language they only use the exact language of our constitution, viz: "All officers hereafter elected or appointed shall hold office during their official term, and until their successors shall be duly elected or appointed and qualified." Again, the same language has been in use in our statutes since 1865. R. S., 2813. The mere fact that the legislature has failed to fix a time for an election to be held prior to 1882, does not in any wise impair the validity of this statute. Again. If there is a reasonable doubt as to the constitutionality of the statute, such doubt must be solved in its favor. *State v. New Madrid Co. Ct.*, 51 Mo. 82; Cooley's Const. Lim., (4 Ed.) 220; *State v. Able*, 65 Mo. 357. The legislature intended by this statute to make the election of justices of the peace uniform throughout the State, so as to avoid mistakes and confusion in the premises. Under the laws prior to this statute some justices were elected at every bi-ennial election, and it was to correct this that the statute was passed.

If any portion of said section is valid it will be maintained unless the entire section is so connected that it cannot be separated without destroying the intention of the law-makers. 54 Mo. 175; *St. Louis Co. v. Griswold*, 58 Mo. 175; Cooley's Const. Lim., (4 Ed.) 214; *In re Burris*, 66 Mo. 442; *Ensworth v. Curd*, 68 Mo. 282. In this statute the second paragraph may be eliminated without in any

way impairing the first. Said first paragraph would be complete within itself, and the constitution would take the place of said discarded paragraph, and say: "That the person holding the office shall continue to exercise the duties of the office during his official term and until his successor is duly elected and qualified." § 5, art. 14, *supra.*

If the entire statute is in harmony with the constitution, or if the first paragraph alone is maintained, then the legislature has failed to provide for the election of a justice of the peace, and in the absence of any statute authorizing such an election, no person can acquire a right to the office by reason of receiving the majority of the votes cast at such an election. Respondent's successor could only be elected at an election duly held under the statute governing the election of justices of the peace.

If there was no authority for the election of justices in 1880, then the failure on the part of the legislature to provide for such election does not create a vacancy. There can be no vacancy, for the commission of respondent, in harmony with the constitution, provides that he shall hold until his " successor is duly elected and qualified." And in the case at bar there could be no vacancy for the reason there was already a person rightfully exercising the duties, fully authorized to hold said office for the term of four years and until his successor is duly elected and qualified. R. S., § 2813; *State v. Lusk,* 18 Mo. 333; *State v. Jenkins,* 43 Mo. 261.

The commission issued to Childs cannot be construed into an appointment. It shows upon its face that it was never intended as an appointment, but was given to him because the court found that at the election in November, 1880, Childs received a majority of the votes cast. Nothing appears in the record. that it was the intention to appoint Childs.

RAY, J.—This was a proceeding in the nature of a *quo warranto,* by the State of Missouri, at the relation of the

6—73

Attorney General, against the respondent, Joseph C. Ranson, requiring him to show by what warrant or authority he claimed to have and exercise the powers and duties of a justice of the peace within and for the township of Kaw, in Jackson county, Missouri. The information was filed December 13th, 1880, and charged, in substance, that at the general election for State, county and township officers held in said township, under authority of law, on the 2nd day of November, 1880, one John W. Childs was legally elected a justice of the peace within and for said township, and that on the 10th day of said month thereafter, said Childs was duly appointed and commissioned a justice of the peace, within and for said township, by the county court of Jackson county, Missouri, and qualified accordingly, and that, thereafter, said Childs was legally entitled to hold said office and receive and enjoy its emoluments and privileges. The information then further charges that the respondent, Ranson, had been elected and commissioned a justice of the peace for said township, in November, 1876, for the term of four years, but that said respondent, since said election and commission of said Childs, in November, 1880, had been and was exercising the powers and duties of a justice of the peace, in said township of Kaw, beyond the term for which he was elected and commissioned, and in violation of law, to the great damage of the State of Missouri, and contrary to the statute in such cases made and provided. The answer of respondent first denies that he is, or was wrongfully holding said office; and then, for a further answer, says, in substance, that at the regular and general election held in November, 1876, he was duly elected a justice of the peace, within and for said township of Kaw, in said county and State, and that in pursuance of said election, he was thereupon duly commissioned by the county court of Jackson county, aforesaid, justice of the peace for said township of Kaw, for the term of four years, and until his successor was duly elected and qualified. The answer then further says, that since

his said election in November, 1876, no person has been duly elected or appointed and qualified, under the law, as his successor; that since then there has been no legal election held, at which his successor could have been elected; and that there was no law or authority for holding an election for justice of the peace in said township in November, 1880; and that by reason thereof, and by virtue of his commission, he was and is entitled, under the constitution and the statutes of the State to hold and exercise the powers and duties of justice of the peace, within and for said township, in said county and State. The reply was a general denial.

The facts in this cause, as shown by stipulation of the parties, are, in substance: That at the regular general election held in November, 1876, the respondent was duly elected justice of the peace within and for Kaw township, Jackson county, Missouri, and that afterward, to-wit: on the 8th day of November, 1876, he was duly commissioned as such justice of the peace for said Kaw township, for the period of four years, and until his successor was duly elected or appointed and qualified, and that since that date, and up to and including the present time, the said Ranson has exercised and still continues to exercise the duties and prerogatives of said office. It is also admitted that at the last regular election held in November, 1880, the said respondent and John W. Childs were competing candidates for said office, and that, at said election, said Childs received a majority of 496 votes over said Ranson; and that thereafter, on the 10th day of November, 1880, said Childs applied to the county court of said county to be commissioned to said office for the period of four years; and that thereupon the said respondent appeared before said court protested against said court issuing a commission to said Childs, and that at the same time a letter was read from Peak & Yeager, addressed to the presiding justice, J. B. Yeager, that under the law and also section 2807, Revised Statutes, the said Childs was not entitled to a commission,

for the reason that there was no provision for an election at the November election, 1880; and that afterward, on the 10th day of November, 1880, the said county court issued a commission to said Childs, as justice of the peace for said township, for the period of two years, and until his successor is elected and qualified; and that said Childs received said commission and qualified thereunder, in due form. It is also admitted that respondent, Ranson, has not turned over his docket or surrendered said office, but continues to hold the same and exercise the duties and prerogatives thereof. It also further appeared that said section 2807, Revised Statutes 1879, mentioned in the above stipulation, as originally enacted, was and is section 5 of an act of the general assembly of the State of Missouri, entitled "An act to revise and amend chapters 176 to 186, inclusive, regulating the jurisdiction and procedure before justices of the peace in civil cases," approved May 8th, 1879, which said section, both in the original act and in the Revised Statutes, is as follows: " Justices of the peace, as herein provided for, shall be elected at the general election to be held in 1882, and shall hold their offices for four years, or until their successors are elected, commissioned and qualified; but every justice of the peace now in office shall continue to act as such until the expiration of his commission and until his successor is elected and qualified."

It would seem from the pleadings and stipulation in the cause, that the parties originally designed to call in question the validity of section 2807, only by reason of its alleged violation of section 8, of article 14 of the constitution of this State. The introduction, at the hearing, of the title of the original bill, by which this section was enacted, was intended to place its invalidity on the further ground that it contravened, also, section 28, of article 4 of the constitution. The first of these questions is a new question in this court. The section, itself, is a new provision in our organic law; and so far, this court has never been called on to construe it. The other question, however, has

been the subject of judicial interpretation, on various occasions, heretofore.

The respondent, for a justification of his continuance in office, relies on his election and commission in November, 1876, which fix his term of office for four years, and until his successor is duly elected and qualified; and also on section 2807 of the Revised Statutes of 1879, coupled with a denial of the validity of the election or appointment of said Childs in November, 1880. If that section (2807), in its entirety, is a valid enactment, it is quite clear that the respondent's title to the office in question cannot be controverted. The relator, in his brief, insists that said section is a nullity for two reasons: 1st, Because it is not embraced in the title of the bill, by which it was originally enacted, as required by section 28, of article 4 of the constitution of the State, which declares that: "No bill (except, etc.,) shall contain more than one subject, which shall be clearly expressed in its title." 2nd, Because that part of said section, which continues justices in office, whose terms were to expire at the recent election, is in violation of section 8, of article 14 of the constitution of Missouri, which provides that: "The compensation or fees of no State, county or municipal officer shall be increased during his term of office; nor shall the term of any office be extended for a longer period than that for which such officer was elected or appointed." The relator also claims that the election of Childs in November, 1880, was a valid election, and that his appointment and commission by the county court of Jackson county, Missouri, to the office in question, was a valid appointment; and that, by consequence, from and after that date, the successor of respondent, in the language of his commission, was duly elected and qualified, and his office thereby terminated by the law of its existence. In this proceeding, however, it may be remarked, the validity of Childs' election, appointment or commission, can be inquired into so far only as they may tend to show that Ranson's term of office had expired; or

that his successor was elected and qualified, and his subsequent continuance in office unlawful. If the above objections of the relator, or either of them, are well taken, it is manifest that the respondent has no title to said office and ought to be removed. We will consider them in the order in which they are made.

The title of this bill, as we have seen, is an "act to revise and amend chapters 176 to 186, inclusive, regulating 1. CONSTITUTIONAL the jurisdiction and procedure before justices LAW: title of acts: section 2807 of the of the peace in civil cases." The subject of chapter on justices of the peace. this section (2807) is to provide for the election of justices of the peace and the tenure of their office; and then it proceeds to declare that "every justice of the peace, now in office, shall continue to act as such until the expiration of his commission, and until his successor is elected and qualified." Is that section outside of that title, within the true meaning and intent of the constitution, according to the accepted construction of that instrument, in this particular?

In the first place it may be well to inquire what is the general scope and intent of this constitutional inhibition? The adjudicated cases, as well as the elementary writers, all concur that it was to prevent the vicious practice of conjoining, in the same bill, incongruous matters, and subjects having no legitimate connection or relation to each other, and in no way germane to the subject expressed in its title; that its object was to prevent surprise or fraud upon members of the legislature, rather than embarrass legislation by making laws unnecessarily restrictive. Cooley on Const. Lim., 174; *City of St. Louis v. Tiefel*, 42 Mo. 590. Some of the adjudicated cases have construed this provision with some strictness, but in the majority of them the rule is otherwise. In the case of the *State v. Miller*, 45 Mo. 497, this court. uses this language: "The courts, in all the states where a like or similar provision exists, have given it a very liberal interpretation, and have endeavored to construe it so as not to limit or cripple legislative enact-

ments any further than what was necessary by the absolute requirements of the law." Justice Cooley, in his work on Constitutional Limitations, (p. 178,) says : "There has been a general disposition to construe the constitutional provision liberally, rather than embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purpose for which it was adopted." The supreme court of Louisiana, in commenting on argument of counsel, which demanded a strict construction of a constitutional clause like this, uses this language : " We think the argument invokes an interpretation of the constitutional clause too rigorous and technical. If in applying it we should follow the rules of a nice and fastidious verbal criticism, we should often frustrate the action of the legislature without fulfilling the intention of the framers of the constitution." Succession of Lanzetti, 9 La. Ann. 333.

With this view of the object and purpose of this constitutional prohibition before us, and recognizing the rules of construction thus announced and adopted as correct, let us proceed with their application to the facts of this case. What, then, is the real scope and bearing of the subject contained in this bill ? The title, on its face, says it is to revise and amend certain " chapters " therein mentioned, regulating the jurisdiction and procedure before justices of the peace in civil cases. In point of fact, what are those " chapters," what do they regulate, and are the subjects thus regulated outside the title of this bill, within the meaning of the constitution, as interpreted by the adjudged cases ? That is a matter of inspection and construction. They are found in the General Statutes of 1865, at page 694, under title 38: "Of Justices of the Peace and their courts." The first of these chapters, 176, provides for the election of justices of the peace ; others of them regulate the jurisdiction and procedure before them ; whilst another, 185, authorizes appeals from their judgments to the circuit court, and regulates the subsequent

proceedings therein.    Can it be said that these subjects or
" chapters " are incongruous ; or that they have no legiti-
mate connection or relation with each other ?    On the con-
trary, are they not all kindred matters, intimately connected
and related, and germane to the general subject—indicated
or expressed in the title of this revisory and amendatory
act?    If so, the section in question cannot be held void by
reason of this constitutional prohibition.

In the case of *Brandon v. State*, 16 Ind. 197, the court
held that :   " If the title of an original act is sufficient to
embrace the provision contained in an amendatory act, it
will be good, and it need not be inquired whether the title
of the amendatory act would, of itself, be sufficient."    This
court, in the case of *City of St. Louis v. Tiefel*, 42 Mo. 590,
in treating of an amendatory act, recognize and approve
this doctrine of the Indiana court.    Apply that principle
to this case, and the same result follows.    The act whose
title we are here considering is, on its face, a revisory and
amendatory bill, and the " chapters" thereby revised and
amended, may be taken as the original act; and the title
prefixed to the same by the General Statutes, as we have
seen, may be accepted as the title to said chapters, since
this arrangement and heading of the General Statutes is
authorized by law, and indeed has become a part of the
law itself.    Gen. St. 1865, pp. 882, 883, §§ 1, 8, 9; R. S.
1879, p. 530, § 3164 ; *People v. Molineux*, 53 Barb. 9.    This
title, it is manifest, would be sufficient to embrace the elec-
tion of justices of the peace, as well as their jurisdiction
and procedure, whether the amendatory act, by itself, would
have been or not.    In Texas, where the same provision
substantially exists, the courts give it a liberal construction,
and it has been held that an act, which was entitled " to
regulate proceedings in the county court," and which also
gave an appeal from the county court to the district court
and regulated proceedings therein, was not within the mis-
chief contemplated by the constitution, and the act was,
therefore, valid.    So of this case ; chapter 185, one of the

chapters revised and amended by this bill, gives an appeal from justices of the peace to the circuit court, and then regulates proceedings therein. This chapter, 185, is as much outside the title of this bill, as chapter 176; yet under the ruling of the Texas court it would be held valid. If so, no reason is seen why chapter 176 should not also be considered good. Section 2807, Revised Statutes 1879, is but an amendment of chapter 176 of the General Statutes of 1865, and is equally within the ruling of the Texas and Indiana courts above quoted. We, therefore, conclude that the first objection urged by the relator is not well taken.

His second objection involves the construction of the 8th section of the 14th article of the constitution, and the 2807th section of the Revised Statutes of 1879. This is a case of first impression in this court. The spirit and intent of the convention, in framing section 8, of article 14 of the constitution, as we apprehend, was to prevent the too frequent practice that had obtained, of passing special laws to increase the compensation or fees of particular officers, or to extend the term of special offices by like special legislation, for the benefit of present incumbents. This, we think, was the object and purpose of this section of the constitution. We cannot suppose that the convention intended thereby to cripple and embarrass the legislature in the exercise of a sound and wise discretion in making such reasonable changes in the times of electing public officers, as the public interest and convenience might require. Such changes were not within the mischief contemplated by the convention, although they might incidentally result, in some instances, in prolonging the time a given officer might have under his commission. The object and intent of the legislature in framing section 2807, Revised Statutes, was to provide and fix a certain and uniform time at which the election of justices of the peace should take place. It was not their purpose thereby to extend the term of said

2. ——: extension of terms of office: justices of the peace.

offices within the meaning of this constitutional prohibition, but simply to supply an omission that had long existed in our statute, prior to this enactment, and remedy as far as possible the inconvenience and want of uniformity resulting therefrom; and, if in the exercise of a sound and proper discretion on the part of the legislature, in thus fixing a definite time for the election of justices of the peace, it should incidently result, that some of the justices should thereby continue in office longer than they would have done in the absence of this enactment, we are not prepared to say that the legislature thereby exceeded its authority, or violated the spirit or intent of the constitution in this particular.

The convention that framed the constitution thought proper, in order: " That no inconvenience might arise from the alterations and amendments of the constitution of the State," to ordain and declare that all persons then filling any office or appointment in the State, should continue in the exercise of the duties thereof, according to their respective commissions and appointments, unless otherwise provided by law. See schedule and section 6 of the schedule to the constitution of the State. By the latter clause of section 2807 of the statute, the legislature at its revising session in 1879, prompted by a like consideration, intended, we think, to obviate any like inconvenience that might result from the alteration of the old law as to the time of electing justices of the peace. The spirit and intent of the convention in framing this ordinance and that of the legislature in passing this section of the statute, are so near alike that it has occurred to us that they ought to receive the same liberal consideration and construction.

Section 37, of article 6 of the constitution, provides that : " In each county there shall be elected or appointed as many justices of the peace as the public good may require, whose powers, duties and duration in office shall be regulated by law." In the exercise of that power and

duty, the legislature, in the revision of 1879, first determined how many justices the public good required in municipal townships, and then proceeded, by the first clause of section 2807, to effect a much needed reform, that had long been felt, in the statute law of the State, by fixing a definite time at which all justices of the peace should be elected ; and to this section is appended the latter clause which provides that : " Every justice of the peace now in office shall continue to act as such until the expiration of his commission, and until his successor is elected and qualified." This latter clause, it is claimed, acts as an extension of the term of certain justices whose terms would otherwise have expired at the recent November election in 1880, and is, therefore, claimed to be in violation of section 8, of article 14 of the constitution above mentioned.

The first question is, what constitutes, under the law, the official term of justices of the peace? The statute in force now and when respondent was elected and qualified, provides that : "Justices of the peace are to be commissioned by the county court, and shall hold their office for four years, and until their successors are elected and qualified." The constitution of the State—5th section, 14th article—declares that : " In the absence of any contrary provision, all officers now or hereafter elected or appointed, shall hold office during their official terms, and until their successors shall be duly elected or appointed and qualified." The stipulation of the parties shows that at the November election in 1876, the respondent was duly elected, commissioned and qualified as a justice of the peace within and for Kaw township, in Jackson county, Missouri, for the period of four years, and until his successor was duly elected or appointed and qualified. It would seem from this that the period of four years, and whatever time thereafter may elapse before the election or appointment and qualification of his successor, constitutes the official term of justices of the peace ; that the time intervening between the end of the four years and the election or appointment

and qualification of his successor, is as much a part of his term of office, as the four years that preceded it. Such, we think, is the meaning and import of this term. In the case of the *State v. Lusk*, 18 Mo. 337, this court, in treating of an act of the legislature creating the office of public printer, and in commenting on the 5th section of that act, which provides that: " The public printer to be elected at each session of the general assembly, shall hold his office for two years     *     *     and until his successor shall be elected and qualified," uses this language: " While it may be true that the design of continuing an incumbent in office until his successor is duly elected and qualified, is to prevent an interregnum in the office, and to have some person always authorized to discharge its duties, it is also true that the incumbent, until the qualification of his successor, is as fully in the office and entitled to all its advantages and emoluments, as he was for the previous period of his service, and it is his right to hold the office until everything has been done which is required by law to give title to the office to another person." *Commonwealth v. Hanley*, 9 Barr (Pa.) 513; *State v. Robinson*, 1 Kas. 17; *State v. Berg*, 50 Ind. 496; *Thompson v. State*, 37 Miss. 518; *Placer Co. v. Dickerson*, 45 Cal. 12; *State v. Daniel*, 6 Jones (N. C.) 444; *Sparks v. Bank*, 9 Am. Law Reg. (N. S.) 365. In the case of *Harris v. Babbit*, 4 Dill. C. C. 190, and some of the cases there cited, a somewhat different doctrine is held.

Before proceeding further in the consideration of the validity, force and effect of this latter clause of section 2807, a brief history of its origin and purpose may throw some light on this question. Upon examination it will be found that it is in fact no new enactment; that it is found as an independent section, in all the prior revisions from 1865, back to 1835. Whether it is to be considered as a new creation of the revision of 1879, or is to be construed as a continuation of a prior law, we will not now stop to consider. See § 7, chap. 176, Gen. St. 1865, p. 695; § 7, chap. 89, R. S. 1855, p. 920; § 7, chap. 92, R. S. 1845, p.

630; § 3, R. S. 1835, p. 344.   Here it had its origin, and if
we will examine the circumstances under which it was first
enacted, we may be able to form some just estimate of its
purpose and force.   By the revision of 1825, it will be
found that justices of the peace, prior to 1835, were, from
time to time, appointed and commissioned by the Gov-
ernor for four years only, upon the recommendation of the
several tribunals having the transaction of county business,
whenever the inhabitants and householders of any town-
ship petitioned for the same.   In this state of the case the
revision of 1835 takes place, and this provision, now consti-
tuting the latter clause of section 2807, made its first ap-
pearance on our statute book, and has remained there ever
since.   Its true purpose and force, at that time, may be
best ascertained and determined by considering the induce-
ments supposed to have influenced the legislature of 1835
to enact it.   Prior to that date, as we have seen, justices
were appointed and commissioned by the Governor for
four years, whenever, from time to time, their appointment
was asked for.   It is apparent from this, that the various
outstanding commissions of justices of the peace, at the
date of the revision of 1835, bore different dates and ex-
pired at different times.   When the legislature of that year
made justices of the peace elective, instead of appointive,
in order to protect the unexpired commissions from the
Governor, it enacted section 3 of the statute of that date,
which is as follows:   "Each justice of the peace now in
office shall continue to act as such until the expiration of
his commission, and until his successor shall be duly elected
and qualified."   In the same form it has been re-enacted
at every revising session from that day to 1879.   Its effect,
was to keep up the same diversity in the beginning and
termination of the office of justice of the peace that origi-
nally existed in 1835, at least, so far as to make some of
them elective at each biennial election, and without any
direct or express statute to that effect.   To correct this evil
section 2807 was enacted in 1879.

It may be objected that while this section, in all the prior revisions under the old constitution of the State, was a proper and valid enactment, it becomes void and inoperative in the revision of 1879, by reason of the new clause in the new constitution on this subject. If we are right in the view we have taken of the objects and purposes of this new section in the constitution of 1875, this objection is not well taken.

But to return to the consideration of the first clause of this section. The power of the legislature to enact that clause, we think, cannot be seriously questioned. The wisdom and propriety of appointing some definite and fixed time at which the election of all justices of the peace shall take place, is admitted by all. The effect of the enactment, it may be granted, was to supersede and repeal all prior statutes authorizing, directly or by implication, any and all elections of justices of the peace prior to November, 1882. It follows from this that the recent election in Kaw township, held in November, 1880, and at which said respondent and said Childs were competing candidates for justice of the peace, and at which said Childs received a majority of 496 votes, was not a valid election, and that it failed to furnish any duly elected and qualified successor to respondent. It also follows that the official term of said respondent, under his commission, the statute and the constitution of the State, has not yet expired ; and that he is rightfully in office, and entitled to exercise its powers and duties for the want of a duly elected and qualified successor to take his place, as provided by law and the terms of his commission. This result would follow by the force and effect of the first clause of this section, without any reference to, or even in the absence of its latter clause. If there was no law for the election of 1880, there is no successor to respondent. If there was no successor, the term of his office continues, by the law of its own existence and creation. If the respondent was rightfully in office, there could be no vacancy, and consequently no warrant for con-

struing Childs' commission for two years into a valid appointment, as claimed by relator. In all such cases it is immaterial whether the want of a successor results from a failure to hold an election, the failure of the person elected to qualify, or from a lawful change in the time of holding an election. Whether the change in a given case is lawful, must depend upon the exercise of a sound discretion on the part of the legislature in making the change. In this case we have deemed that discretion to have been wisely and beneficially exercised, and, therefore, valid.

Justice Cooley, in his work on Constitutional Limitations, 220, well remarks : "It has been said by an eminent jurist, when courts are called on to pronounce the invalidity of an act of legislation passed with all the forms and ceremonies requisite to give it the force of law, they will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light upon the subject, and never declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt. A reasonable doubt must be solved in favor of the legislative action, and the act be sustained." Admit that this case has its difficulties and perplexities; are they so great that we would be warranted in pronouncing the act invalid ? We think not. In this case there are other considerations which make this rule more imperative. We understand that the business of the country, confiding in the validity of this enactment, has adjusted itself to its provisions; that justices of the peace, throughout the State, generally, are holding office, acknowledging deeds, solemnizing matrimony, trying causes, administering justice and exercising all the powers and duties incident to their office, and we, therefore, submit that, under the circumstances, it would be extremely hurtful to the best interests of society, to have doubts thrown upon the legality and validity of all these proceedings by an adverse decision in this cause.

We, therefore, conclude that we are not required or authorized, by anything shown us in this case, to pronounce the act invalid.

Respondent's answer adjudged sufficient, and proceedings dismissed.   All concur.